**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lorenzo Cortez COLBERT,**
**Defendant–Appellant.**

**No. 95–1143.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 26, 1996.

Decided Feb. 26, 1996.

Kathleen Moro Nesi, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Attorney, Detroit, MI, for U.S.

Arthur Jay Weiss (argued and briefed), Law Offices of Arthur Jay Weiss & Associates, Farmington Hills, MI, for Lorenzo Cortez Colbert.

Before: MARTIN, GUY, and RYAN, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Lorenzo Colbert proffered a conditional plea of guilty to possession with intent to

distribute cocaine base under 21 U.S.C. § 841(a)(1), reserving his right to appeal the district court's denial of his motion to suppress evidence seized during a police search of his residence. The district court sentenced Colbert to fifteen years' imprisonment. Colbert now appeals the district court's denial of his motion to suppress. For the reasons set forth below, we **REVERSE**.

This case arises out of a 1989 Detroit police department homicide investigation in which Colbert was a suspect. On October 4, 1994, a task force consisting of Detroit police officers and federal agents conducted surveillance outside the apartment where Colbert was staying. The agents had a warrant for Colbert's arrest, which charged him with escape in relation to previous convictions for weapons violations and assault. The surveillance began at 9:30 a.m., and ended at 12:30 p.m. that same day. The apartment was leased by Andrea Lewis, Colbert's girlfriend.

Although the task force was able to surround the apartment effectively, and to trace Colbert's movements, they were not able to see the front door of the apartment and therefore could not see whether any of the foot traffic in the area went into or came out of the apartment. At 12:30 p.m., Colbert left the apartment and walked toward his car, which was parked forty to fifty feet away from the entrance to his apartment. The federal/state task force closed in on Colbert and arrested him as he was standing next to the driver's door of his car, handcuffing Colbert in the process.

According to the United States, a few moments after the arrest, Ms. Lewis came running out of the apartment, "very irate," "very agitated, screaming and yelling," and in a "hostile rage." The police officers quickly detained Lewis, although they did not search her. Also, there is no indication that the police suspected that she was armed or that she possessed any contraband on her person. Colbert admits that Lewis came outside after his arrest, but asserts that this was reasonable behavior after she watched Colbert surrounded by eight or nine men in civilian clothes brandishing weapons.

After Lewis came running out, Special Agent Michael Thomas Hawes immediately went to the front door of the apartment. Hawes testified that he was "concerned that somebody might ... still be in there." The apartment's entrance was barred by a closed screen door, which Hawes opened and yelled into the apartment, "Police!" He received no answer, but testified that he saw a shotgun leaning against a wall in plain view. Colbert refuted this testimony, claiming that the gun was not in plain view, but the district court credited the police officer's testimony.

Hawes then conducted a protective sweep of the apartment and observed a revolver and scales in plain view (again Colbert claims that these items were not in plain view, but the district court credited the agents' testimony). The police officers then secured the apartment for four hours while they obtained a search warrant. During the execution of the warrant, the police seized a small amount of cocaine, the shotgun, the revolver, ammunition, scales, and some personal papers.

During the hearing on Colbert's motion to suppress the evidence seized from Ms. Lewis' apartment, the district court found the officers' protective sweep of Colbert's home to be justified under *Maryland v. Buie*, 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990), stating:

I have already ruled that the protective sweep that was done at the time of the arrest of Mr. Colbert was warranted for a number of different reasons, under the United States Supreme Court's decision in [*Buie*]. In particular, the factors that I am focusing on in upholding the need for a protective sweep are the fact that Mr. Colbert was on escape status at the time, he was wanted for murder, he was under investigation for possible involvement in drug trafficking. At the time the surveillance was taken up at approximately 9:30 a.m. in the morning of this apartment at Chalmers, Mr. Colbert was believed to be in that apartment. Mr. Colbert then came out of the apartment, attempted to enter a vehicle after having already brought into the house, with another gentleman, a duffel bag. Although the other gentleman had left the premises at the time of Mr. Colbert's arrest, a young woman, Ms. Lewis, came out of the house. Both officers

have described her as ranting and raving and trying to interfere with the arrest, or at least attempting to ... yell at the officers effectuating the arrest.

In view of this information, I believe that all of this information which Officer Hawes had at the time of the arrest, it was reasonable for him, and these facts present articulable facts which, taken together from any rational inferences which can be drawn from those facts, warranted Officer Hawes to be. prudent and reasonable in believing that the apartment may have harbored another individual, potentially, who may have posed a threat to those at the arrest scene. For that reason I have upheld the efficacy of the protective sweep.

Colbert now appeals this denial of his motion to suppress.

■ We review the district court's findings of fact for clear error and its conclusions of law de novo. *United States v. Johnson*, 9 F.3d 506, 508 (6th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2690, 129 L.Ed.2d 821 (1994). Neither party takes issue with the district court's findings of fact.

■ In *Maryland v. Buie*, the Supreme Court recognized an exception to the traditional warrant requirement for officers making an arrest inside an arrestee's home, allowing them to conduct a "protective sweep" of the premises to ensure the officers' safety. The *Buie* case had two holdings. First, during a search incident to an arrest occurring inside a home, officers may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* at 334, 110 S.Ct. at 1098. Second, officers may conduct a search more pervasive in scope when they have "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* This sweep may "extend only to a cursory inspection of those spaces where a person may be found," and may last no longer than "is necessary to dispel the reasonable suspicion of dan-

ger...." *Id.* at 335, 110 S.Ct. at 1099. This case involves the second, more pervasive type of *Buie* search. Specifically, we must decide whether Hawes had articulable facts which warranted his intrusion into the home after Colbert was arrested and placed in handcuffs outside that home.

■ Colbert first argues that a protective search is never justified when a defendant is arrested outside a home, and this Court has never squarely addressed the issue. However, in *United States v. Calhoun*, we mentioned in dicta that, where a defendant is arrested outside a home, "a warrantless search of the apartment could be justified only if the officers had a specific, reasonable basis for believing ... that they were in danger from persons inside...." 49 F.3d 231, 234 n. 3 (6th Cir.1995). Further, in a somewhat analogous factual context, we upheld a protective sweep of a motel room where the defendant was arrested twenty to seventy-five feet outside the room. *United States v. Biggs*, 70 F.3d 913, 915–16 (6th Cir.1995). Because persons generally have a stronger expectation of privacy in a home rather than a hotel room, *Biggs* would not necessarily foreclose a ruling that a protective sweep of a home is never justified after an arrest which takes place outside the home. However, the analytical approach taken by the Supreme Court in *Buie* and this Circuit in *Biggs* argues against the adoption of such a bright-line rule.

■ In *Buie*, the Supreme Court weighed the need to ensure officer safety against an individual's reasonable expectation of privacy in the home, noting that "[t]he risk of danger in the context of an arrest in the home is as great as, if not greater than, it is in an on-the-street or roadside investigatory encounter." *Buie*, 494 U.S. at 333, 110 S.Ct. at 1098 (relying on *Terry v. Ohio*, 392 U.S. 1, 24–25, 88 S.Ct. 1868, 1881–82, 20 L.Ed.2d 889 (1968), and *Michigan v. Long*, 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 3480–81, 77 L.Ed.2d 1201 (1983)). We believe that, in some circumstances, an arrest taking place just outside a home may pose an equally serious threat to the arresting officers. In our view, the fact that the arrest takes place outside

rather than inside the home affects only the inquiry into whether the officers have a reasonable articulable suspicion that a protective sweep is necessary by reason of a safety threat. *United States v. Henry,* 48 F.3d 1282, 1284 (D.C.Cir.1995). We decline to adopt a bright-line rule that prohibits police officers from conducting a protective sweep of a home every time they arrest a defendant outside that home, regardless of the potential danger from other persons inside.[1]

■ Colbert next argues that the asserted justification for the protective sweep conducted here was inadequate. We begin by noting that the district court, in its order denying Colbert's motion to suppress, considered factors irrelevant to the inquiry into whether the police had a reasonable suspicion of danger which would support the protective sweep conducted here. The district court stressed that "Mr. Colbert was on escape status at the time, he was wanted for murder, he was under investigation for possible involvement in drug trafficking." These facts, however, are not appropriate facts to consider when determining whether the arresting officers reasonably believed that *someone else inside the house* might pose a danger to them. The facts upon which officers may justify a *Buie* protective sweep are those facts giving rise to a suspicion of danger from attack by a third party during the arrest, not the dangerousness of the arrested individual.

■ Here, Colbert was already in custody and outside the house. Not only did he pose little or no threat to the arresting officers at that time, but, as we have already explained, *Colbert's* dangerousness is not germane to the inquiry into whether the police may conduct a protective sweep in response to a reasonable suspicion of a threat from some *other person* inside the home. *See Henry,* 48 F.3d at 1284 (explaining that the threat posed by an individual already in custody does not justify a protective sweep). If dis-

trict courts are allowed to justify protective sweeps based on the dangerousness of the arrestee, nearly every arrest taking place in or near a home will include a protective sweep.

Viewed properly, only one fact arguably justifies Hawes' action in this case; Colbert's girlfriend, Ms. Lewis, came running out of the house in a frantic and upset manner. The United States understandably emphasizes this fact in its brief to this Court. We agree that, in some situations, an individual bursting out of a house unexpectedly may well give rise to a concern that a danger lurks inside the home. However, we find it difficult to draw that inference here. The key to our view of the facts is that the police knew all along that they were surveilling *Ms. Lewis'* apartment. Hawes testified that he had been advised that Ms. Lewis resided there, and the officers had no reason to assume that she was not there on the day they arrested Colbert. In fact, it is altogether incredible that an officer would be surprised by the fact that a resident of a home would come out of his or her house upon seeing a large group of undercover police officers arresting an individual who just left that resident's apartment. In addition, there is no indication that Ms. Lewis herself posed any kind of a threat to the officers, indeed she wasn't searched or taken into custody at all. *See United States v. Ford,* 56 F.3d 265, 269 n. 10 (D.C.Cir.1995) (stating that a "visibly upset mother" had nothing to do with determining whether some other individual posed a threat from inside the house). If the police officers believed that Ms. Lewis posed a threat, it appears to us that, at the very least, they would have conducted a pat down search of Ms. Lewis to ensure that she had no weapons on her person.

■ Finally, Officer Hawes testified that he "didn't have any information at all" when asked whether he had information that any-

---

1. Several other circuits have upheld protective sweeps after an arrest outside a home where the officers had an articulable basis upon which to conclude that someone inside the home posed a danger to the officers. *See, e.g., United States v. Hoyos,* 892 F.2d 1387, 1397 (9th Cir.1989), *cert. denied,* 498 U.S. 825, 111 S.Ct. 80, 112 L.Ed.2d

52 (1990); *United States v. Jackson,* 700 F.2d 181, 189 (5th Cir.) (quoting *United States v. Sheikh,* 654 F.2d 1057, 1071 (5th Cir.1981), *cert. denied,* 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982)), *cert. denied,* 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983).

one was inside the Lewis apartment prior to his decision to conduct the protective sweep. Lack of information cannot provide an articulable basis upon which to justify a protective sweep. *See United States v. Delgadillo–Velasquez,* 856 F.2d 1292, 1298 (9th Cir.1988) (holding a protective sweep unconstitutional where officers had "no information that any other persons were in the apartment"); *United States v. Akrawi,* 920 F.2d 418, 420–21 (6th Cir.1990) (holding unconstitutional a sweep of the second floor of a house after arrest occurred on first floor where officers could point to "no specific basis" for believing anyone posed a threat from the second floor). Indeed, this justification threatens to swallow the general rule requiring that police obtain a warrant as completely as does focusing on the dangerousness of the arrestee.[2] In fact, allowing the police to conduct protective sweeps whenever they do not know whether anyone else is inside a home creates an incentive for the police to stay ignorant as to whether or not anyone else is inside a house in order to conduct a protective sweep. Finally, and perhaps most importantly, allowing the police to justify a protective sweep on the ground that they had no information at all is directly contrary to the Supreme Court's explicit command in *Buie* that the police have an articulable basis on which to support their reasonable suspicion of danger from inside the home. "No information" cannot be an articulable basis for a sweep that requires information to justify it in the first place.

Finally, we recognize that police officers have an incredibly difficult and dangerous task and are placed in life threatening situations on a regular basis. It would perhaps reduce the danger inherent in the job if we allowed the police to do whatever they felt necessary, whenever they needed to do it, in whatever manner required, in every situation in which they must act. However, there is a Fourth Amendment to the Constitution which necessarily forecloses this possibility.

As long as it is in existence, police must carry out their often dangerous duties according to certain prescribed procedures, one of which has been transgressed here.

We reverse the judgment of the district court with regard to the legality of the protective sweep and its ruling on the admissibility of the evidence found as a result of that sweep. The case is remanded for further proceedings in accordance with this opinion. **REVERSED** and **REMANDED**.

---

**2.** We confronted a similar problem in *United States v. Hatcher,* 680 F.2d 438 (6th Cir.1982). There, the district court upheld a protective sweep of the basement of the house in which the defendant was arrested, focusing on the fact that drug trafficking and drug arrests posed great danger to police officers. We reversed the district court, noting that justifying a search because drug related arrests are dangerous "would permit wholesale abrogation of the Fourth Amendment reasonableness requirement...." *Id.* at 444.