**UNITED STATES of America,
Appellant,**

v.

**Andres Fernando MORAN VARGAS,
Defendant–Appellee.**

**Docket Nos. 03–1383(L), 03–1535(CON).**

United States Court of Appeals,
Second Circuit.

Argued Dec. 12, 2003.

Decided July 16, 2004.

---

Sean Haran, Assistant United States Attorney, Brooklyn, N.Y. (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, and Peter A. Norling, Assistant United States Attorney, of counsel), for Appellant.

Michael D. Weil, Staff Attorney, New York, N.Y. (Barry D. Leiwant, Attorney-in–Charge, The Legal Aid Society, Federal Defender Division, Appeals Bureau, of counsel), for Defendant–Appellee.

Before WALKER, Chief Judge, and OAKES and KATZMANN, Circuit Judges.

OAKES, Senior Circuit Judge.

Andres Fernando Moran Vargas ("Moran") was arrested for heroin possession after Drug Enforcement Administration (DEA) agents found pellets of the drug in Moran's motel bathroom. Moran moved to suppress the narcotics evidence, arguing that the agents' search of the bathroom was illegal. The United States District Court for the Eastern District of New York, Sterling Johnson, Jr., *J.*, granted the motion to suppress, finding that the bathroom search did not fall within the protective sweep exception set forth in *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). Although we do not adopt the reasoning of the district court in granting the motion, we agree that the bathroom search violated Moran's Fourth Amendment rights. Accordingly, we affirm the grant of Moran's suppression motion.

## BACKGROUND

On October 10, 2002, DEA agents received a tip that a potential narcotics courier had checked into the Airway Motor Inn, which is located near John F. Kennedy International Airport in Queens, New York. Two agents promptly went to the Airway Motor Inn and knocked on Moran's door. Moran, a 19–year–old Ecuadorian, answered the door and agreed to speak to the agents. He led them into his motel room and agreed to let them look around to make sure that no one else was present. After the agents checked the closet, they began interviewing Moran about the nature and purpose of his visit to New York. Neither agent patted Moran down for weapons, and the interview was conducted in a casual and friendly manner.

When Moran claimed not to understand a question about whether he had smuggled anything into the country, he was put on the phone with a Spanish-speaking agent. The agent who had been interviewing him then noticed that the bathroom door was ajar, and indicated to Moran that he was going to open the door. Moran quickly shut the bathroom door, telling the agents that they could not use his bathroom. In response to Moran's conduct, the agents contacted a third DEA agent to come to Moran's motel room. When the third agent arrived, one of the agents opened the bathroom door and saw feces containing heroin pellets in the bathtub. Moran was arrested and subsequently admitted to having swallowed the heroin pellets and to having additional heroin pellets in his luggage.

Moran moved to suppress the narcotics evidence found in the bathroom search. The district court referred Moran's suppression motion to a magistrate judge, who held a hearing at which the DEA agents testified. The government conceded that there was no probable cause to arrest

Moran prior to the bathroom search and that the agents did not have Moran's consent to search the bathroom. It argued that the search of the bathroom was a protective sweep justified by the agents' reasonable suspicion that Moran was a drug courier and that someone posing a danger to them could have been hiding in the bathroom.

In his report and recommendation, the magistrate judge found the agents' testimony "entirely credible" and determined that the agents had a reasonable suspicion that a dangerous person might have been hiding behind the bathroom door. *See United States v. Moran Vargas,* No. 02 CR 1307(SJ), 2003 WL 21313721, at *2, *5 (E.D.N.Y. May 28, 2003). The magistrate judge found, however, that the bathroom search was not authorized as a protective sweep under *Buie* because it was not incident to an arrest. *Id.* at *8. Recognizing that circuit courts have disagreed over the reach of *Buie,* the magistrate judge considered whether *Buie* should be read to allow a protective sweep when no contemporaneous arrest occurs. *Id.* at *6–7. Reasoning that a *Buie* search is premised on the risks inherent when attempting to take a person into custody, the magistrate judge found that such risks were not present in Moran's case, and concluded that a permissible protective sweep could be conducted only in connection with an arrest. *Id.* at *8–9.

The district court adopted the magistrate judge's report and recommendation in its entirety, stating that:

Although the officers might have reasonably believed that there was someone in the bathroom at the time they made their choice to ignore [Moran]'s protestations, the DEA agents were not necessarily in the same position as officers faced with the potential danger envisioned by the Supreme Court when it authorized the protective sweep in *Buie.* *See Buie,* 494 U.S. at 333, 110 S.Ct. 1093 (discussing the dangers of an in-home arrest). Accordingly, this Court declines to take this opportunity to expand *Buie*'s reach.

*Id.* at *2. The district court therefore granted Moran's motion to suppress and this appeal followed.

## DISCUSSION

■ "When examining a ruling on a motion to suppress, 'we review the district court's factual findings for clear error and its conclusions of law *de novo,*' viewing the evidence 'in the light most favorable to the prevailing party.'" *United States v. Awadallah,* 349 F.3d 42, 71 (2d Cir.2003) (quoting *United States v. Harrell,* 268 F.3d 141, 145 (2d Cir.2001)). A determination of reasonable suspicion, such as that made by the district court with respect to the agents' belief that someone was in Moran's bathroom, "should be reviewed *de novo* on appeal." *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

The government has conceded that it had neither a search warrant nor an arrest warrant, that it lacked probable cause to either search or arrest Moran, that there were no exigent circumstances, and that Moran expressly and unequivocally revoked his consent to the agents' search of the bathroom. The only basis the government asserts for its claim that the bathroom search was legal is that it was permissible pursuant to *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).

The district court granted Moran's motion to suppress on the ground that a protective sweep under *Buie* is constitutional only when conducted in the course of arresting someone on the premises. As the district court and magistrate recog-

nized, whether *Buie* established such a bright-line rule is an issue upon which circuit courts have differed. *Compare United States v. Reid*, 226 F.3d 1020, 1027 (9th Cir.2000) (interpreting *Buie* to require an arrest) *with United States v. Gould*, 364 F.3d 578, 584 (5th Cir.2004) (en banc) (holding that an arrest is not, *"per se*, an indispensable element of an in-home protective sweep"); *United States v. Taylor*, 248 F.3d 506, 513 (6th Cir.2001) (same). We find it unnecessary to decide the parameters of *Buie* in this case and decline to do so. Instead, we affirm the district court's decision because even if, as the government argues, a protective sweep may be permissible under circumstances other than the execution of an in-home arrest, the agents' search failed to meet the requirements set forth in *Buie* for conducting such a sweep.

█ In *Buie*, the Supreme Court identified three types of searches that could be performed during the course of an in-home arrest.[1] First, when an arrest is initiated based on a warrant and probable cause to believe that the target is within the premises, officers are "entitled to enter and to search anywhere in the house in which [the arrestee] might be found. Once he [is] found, however, the search for him [is] over, and there [is] no longer that particular justification for entering any rooms that ha[ve] not yet been searched." *Buie*, 494 U.S. at 333, 110 S.Ct. 1093. Next, because of the risks inherent in taking an individual into custody, officers are automatically justified in searching as "an incident to the arrest" the area adjoining the place of arrest "from which an attack could be immediately launched." *Id.* at 334, 110 S.Ct. 1093. Lastly, for officers to search

further in a protective sweep, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* The justification for a protective sweep is ephemeral: it may last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id.* at 335–36, 110 S.Ct. 1093.

The government initially contends that because the bathroom adjoined the place where Moran was questioned and ultimately arrested, the search here was of the second sort authorized by *Buie* and, therefore, the DEA agents did not need any articulable facts to justify the search. This argument lacks merit. The distinctions drawn by the Court in *Buie* with respect to pre- and post-arrest searches were based on the legal justification for a particular search, not on the proximity of the area to the arrestee. *Id.* at 333, 110 S.Ct. 1093. The Court's justification for permitting a suspicionless search of "spaces immediately adjoining the place of arrest" was the danger inherent in taking a person into custody in a home. *Id.* at 333–34, 110 S.Ct. 1093. Here, there was no arrest prior to the search of Moran's bathroom and, therefore, the second type of warrantless search described by *Buie* does not apply.

█ The government's sole remaining argument is that the bathroom search constituted a protective sweep under *Buie*. Assuming for the purposes of argument that *Buie*'s protective sweep doctrine en-

---

1. A person staying in a motel room has the same constitutional protection against unreasonable searches of that room as someone in his or her own home. *See Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *United States v. Mankani*, 738 F.2d 538, 544 (2d Cir.1984).

compasses circumstances other than an officer's presence in a home for the purpose of effecting an arrest, the government was obligated to establish specific and articulable facts that warranted the agents' belief that there was someone hiding in the bathroom who posed a danger to them. *See id.* at 334, 110 S.Ct. 1093. Based on the agents' testimony, the district court and the magistrate found that the agents had a reasonable suspicion to believe that there was a dangerous person in the bathroom. Reviewing that determination *de novo,* we conclude that the agents' testimony did not provide sufficient articulable facts that would warrant a reasonably prudent officer to believe that an individual posing a danger to the agents was hiding in the bathroom of Moran's motel room.

The government contends that the agents had a reasonable belief that other people might be in the motel room due to their suspicion that Moran was a drug courier, their experience that drug couriers often meet up with their contacts, and their awareness that drug traffickers are frequently armed and dangerous. Although the district court and magistrate agreed with this argument, we find that such generalizations, without more, are insufficient to justify a protective sweep. *See United States v. Taylor,* 248 F.3d at 514 (generalized suspicion that defendant was a drug dealer was inadequate, standing alone, to justify protective sweep); *cf. Buie,* 494 U.S. at 334 n. 2, 110 S.Ct. 1093 (noting that "[e]ven in high crime areas, where the possibility that any given individual is armed is significant, ... reasonable, individualized suspicion [is required] before a [protective sweep] can be conducted").

No facts specific to this case support a finding that the agents reasonably believed (1) that anyone other than Moran was present inside the motel room, or (2) that anyone so concealed posed a danger to their safety. Significantly, the tip the agents received about Moran indicated that Moran had checked into the motel by himself, and the agents arrived at the motel only an hour or so after receiving the tip. Moreover, the agents did not stop at the reception desk to inquire whether anyone besides Moran had entered the room or been seen on the motel premises. In addition, despite the fact that the agents had already been questioning Moran for some time prior to the search, none of the agents testified to hearing any noises coming from the bathroom or to seeing any evidence that might have indicated that another person was present.

Not only was there no objective basis to warrant a reasonable suspicion of danger from a second person, there was also no evidence of subjective fear on the part of the agents. Given the fact that the agents admitted overlooking the bathroom until well into their interview with Moran, it is safe to assume that none of the agents had any suspicion that someone was in there until Moran denied consent to search it. In our view, reasonable suspicion cannot be based solely on a suspect's exercise of his constitutional right to revoke or limit the scope of a search to which he has consented. *Cf. Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (holding that court must analyze the totality of the circumstances when determining whether probable cause existed for a search). In any event, none of the agents testified that he came to believe that someone was hiding in the bathroom as a result of Moran's denial of consent to search it. They simply testified that when Moran reacted forcefully to their attempt to search the bathroom, the whole tenor in the motel room changed and they knew something was wrong. Moreover, the assertion that the agents were concerned for their safety is negated by the fact that the

agents did not attempt the most basic of protective maneuvers: they did not pat down Moran.

Several circuits have confronted similar situations in which the government has been unable to establish the specific facts justifying a protective sweep. The Sixth Circuit, in a case where an officer testified that he " 'didn't have any information at all' " as to the potential existence of danger, held that such circumstances were insufficient to establish the "articulable facts" mandated by *Buie*. *United States v. Colbert*, 76 F.3d 773, 777–78 (6th Cir.1996). In that case, the court concluded that

> [l]ack of information cannot provide an articulable basis upon which to justify a protective sweep.... [A]llowing the police to justify a protective sweep on the ground that they had no information at all is directly contrary to the Supreme Court's explicit command in *Buie* that the police have an articulable basis on which to support their reasonable suspicion of danger from inside the home. "No information" cannot be an articulable basis for a sweep that requires information to justify it in the first place.

*Id.* at 778 (internal citations omitted). The Third Circuit, in a case where the arrestee and all accomplices were already outside the house and in custody when the officers performed a "protective sweep" of the premises, agreed with *Colbert* and held that the officers' testimony failed to establish articulable facts to support the search. *See Sharrar v. Felsing*, 128 F.3d 810, 825 (3rd Cir.1997). Similarly, in *United States v. Chaves*, 169 F.3d 687, 692 (11th Cir. 1999), the court found illegal a warehouse search conducted forty-five minutes after an arrest and the officers had no information about what was inside the warehouse. The court held that "in the absence of specific and articulable facts showing that another individual, who posed a danger to

the officers or others, was inside the warehouse, the officers' lack of information cannot justify [a] warrantless sweep." *Id.* (citing *Colbert* and *Sharrar*). The principle enunciated in these cases—that lack of information cannot justify a protective sweep—applies with equal force here.

In the absence of "articulable facts ... warrant[ing] a reasonably prudent officer in believing that the area to be swept harbor[ed] an individual posing a danger to those on the arrest scene," *Buie*, 494 U.S. at 334, 110 S.Ct. 1093, the agents' search of Moran's bathroom cannot be upheld under *Buie*'s protective sweep doctrine. We therefore conclude that the search was an unconstitutional violation of Moran's Fourth Amendment rights. Accordingly, we affirm the decision of the district court to grant Moran's motion to suppress the evidence discovered in the search.

In light of our holding, and after careful review of the government's arguments on the issue, we also uphold the district court's bail determination in this case.

## CONCLUSION

For the foregoing reasons, the order of the district court granting Moran's motion to suppress evidence is affirmed. The district court's bail order is also affirmed.