[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 18, 2007
THOMAS K. KAHN
CLERK

No. 07-10619
Non-Argument Calendar

_____

D. C. Docket No. 06-20265-CR-ASG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES FRANKLIN MCCOY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(December 18, 2007)**

Before ANDERSON, HULL and WILSON, Circuit Judges.

PER CURIAM:

James Franklin McCoy appeals his conviction and 264-month sentence for

possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(e)(1). For the reasons set forth below, we affirm.

## I. BACKGROUND

On April 24, 2006, approximately ten Miami police officers went to 415 NW 9th Street, Apartment 9 ("Apartment 9") to execute a felony arrest warrant for Andrea McWhorter, who was known to carry weapons and was a suspect in at least 3 murders. Miami Police Detective Wayne Tillman received an anonymous tip that McWhorter had exited a compact beige car and entered Apartment 9. Before the officers police knocked on the door, McCoy, who was known to the officers as a felon, appeared in the doorway. As McCoy was moving out of the doorway, Detective Suarez saw a chrome revolver lying on the floor in the apartment near the couch and yelled "gun." Around the time that McCoy opened the door to the apartment, Tillman saw a beige car leaving at a high rate of speed, but he testified that he did not try to stop the vehicle because Suarez had just yelled "gun."

Police handcuffed McCoy and patted him down for weapons. During the pat-down, police found keys to the apartment in McCoy's pockets. The officers testified that they entered the apartment to make sure that neither McWhorter nor anyone else was inside. After the officers were inside, McCoy told an officer that no one was inside the apartment. Once the officers cleared the apartment, they

2

exited and obtained a search warrant. Pursuant to that search warrant, police recovered the firearm along with crack cocaine, marijuana, and drug paraphernalia.

Before trial, McCoy moved to suppress the evidence that the officers obtained from the pat-down and search. The magistrate judge recommended that McCoy's motion to suppress be denied. The magistrate found that, pursuant to *Maryland v. Buie*, 494 U.S. 325, 327, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990), a protective sweep was permissible because McCoy was lawfully arrested within minutes of the search. The district court affirmed the report and denied McCoy's motion to suppress.

At trial, Tillman testified that McCoy was not a lessee of the apartment, and the police did not find any of McCoy's clothes in the apartment. Police did find, however, a letter that was postmarked October 2005 and addressed to McCoy at Apartment 9. Suarez also identified copies of Western Union wire transfer receipts found in a kitchen drawer in which McCoy was listed as the transferor. The Maintenance Manager for the building testified that McCoy lived at Apartment 9 for about a year and a half.

McCoy stipulated that he was a convicted felon and that the chrome revolver found near the couch had traveled in interstate and foreign commerce. McCoy testified that he lived with his mother and sister, but that McWhorter had allowed

3

him to rest on the couch in Apartment 9 on the day of the arrest because he had spent the previous night in the hospital. After resting for about forty-five minutes to an hour, McCoy says he got up, opened the door, and found the police outside. He claims, however, that he did not see a gun while he was in the apartment. McCoy explained that the letter that was found inside Apartment 9 came from a prisoner friend who used to live in the same building, and "he probably figured out that . . . [McCoy] might get that letter from, from [McCoy's friend]." According to McCoy, police found the Western Union receipts in his truck where McCoy kept them.

After the defense rested, McCoy failed to reassert his motion for a judgment of acquittal and the jury found McCoy guilty of possession of a firearm by a convicted felon.[1] In the presentence investigation report ("PSI"), the probation officer classified McCoy as an armed career criminal under 18 U.S.C. § 924(e). Based on a total offense level of 34 and a criminal history category of VI, the guideline imprisonment range was 262 to 327 months' imprisonment. McCoy did not object to the findings in the PSI.

---

[1] In the five-count superceding indictment, McCoy was also charged with possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i) (Count II), and three counts of possession with intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1) (Counts III, IV, V). The jury was unable to reach a verdict on Counts II-V, and the district court declared a mistrial on those counts. After McCoy was sentenced for possession of a firearm by a convicted felon, the government dismissed Counts II-V.

At the sentencing hearing, McCoy objected to being classified as an armed career criminal. He admitted, however, that he had been "convicted of [1] battery on a law enforcement officer, resisting with violence, [2] fleeing and attempting to elude during a high-speed chase[,] and [3] aggravated assault on a police officer." The district court determined that McCoy was an armed career criminal and imposed a sentence of 264 months' imprisonment.

On appeal, McCoy argues that: (1) the district court erred in denying his motion to suppress; (2) the evidence was insufficient to support his conviction; and (3) the district court erred in classifying him as an armed career criminal.

## II. DISCUSSION

A. Suppression of the Firearm

McCoy first argues that the district court erred by denying his motion to suppress the firearm because exigent circumstances did not exist to justify the officers' protective sweep of Apartment 9. In reviewing a district court's denial of a motion to suppress, we review findings of fact for clear error and the application of law to those facts de novo. *United States v. Acosta*, 363 F.3d 1141, 1144 (11th Cir. 2004). We construe the facts in the light most favorable to the party prevailing in the district court, *United States v. Hromada*, 49 F.3d 685, 688 (11th Cir. 1995), and we may affirm a district court decision on any ground supported by the record,

5

*Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1088 n.21 (11th Cir. 2007). While "[t]he warrantless search of a home is presumptively unreasonable," *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) (internal quotation marks omitted), "[t]he exigent circumstances exception to the warrant requirement recognizes a warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant." *Bashir v. Rockdale County*, 445 F.3d 1323, 1328 (11th Cir. 2006) (internal quotation marks omitted). Probable cause must exist, however, even where exigent circumstances are present, *id.*, and the government bears the burden of proving exigent circumstances, *United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002).

The exigent circumstances exception only applies if the police reasonably believed that an emergency situation justified warrantless action. *Id.* at 1338. Examples of exigent circumstances include: "danger of flight or escape, loss or destruction of evidence, risk of harm to the public or the police, mobility of a vehicle, and hot pursuit." *Bashir*, 445 F.3d at 1328 (internal quotation marks omitted).

We hold that exigent circumstances justified the warrantless search of Apartment 9 because the risk of harm that the officers reasonably perceived presented a compelling need for immediate action. The officers believed that

McWhorter was inside the apartment when Suarez noticed the chrome revolver. The officers knew, moreover, that McWhorter was known to carry weapons, was a suspect in at least three murders, and was believed to be inside the apartment. Although Tillman acknowledged that he saw a beige vehicle leaving the scene at a high-rate of speed around the same time that Suarez yelled "gun," Tillman testified that his attention was focused on the potentially dangerous situation at the apartment. The district court did not err, therefore, in denying McCoy's motion to suppress the firearm.

We reject McCoy's argument based on *United States v. Colbert*, 76 F.3d 773 (6th Cir. 1996), because the circumstances in *Colbert* are not analogous to those that the officers faced here. Colbert was arrested while leaving his girlfriend's apartment. Even though a shotgun was resting in plain view inside the apartment when the officers arrested Colbert, the Sixth Circuit determined that the protective sweep of the apartment was unreasonable because nothing suggested that anyone might have been in the apartment. *Id.* Here, however, the officers' belief concerning the possible presence of a dangerous person in Apartment 9 was reasonable.

B. Suppression of the Keys

McCoy next argues that the keys to Apartment 9 must be suppressed

because the officers discovered them during a pat-down incident to an unlawful arrest. "[A] law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt County*, 542 U.S. 177, 185, 188, 124 S. Ct. 2451, 2458, 159 L. Ed. 2d 292 (2004). "Once an officer has legitimately stopped an individual, the officer can frisk the individual so long as 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (quoting *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 1883, 20 L. Ed. 2d 889 (1968)).

Whether an officer has reasonable suspicion is a question of law that we review de novo. *Evans v. Stephens*, 407 F.3d 1272, 1280 (11th Cir. 2005) (en banc). We consider the question in light of the totality of the circumstances from the perspective of a reasonable officer. *Hicks v. Moore*, 422 F.3d 1246, 1252 (11th Cir. 2005). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.

Ct. 673, 675-76, 145 L. Ed. 2d 570 (2000). The officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. Reasonable suspicion does not, however, "require officers to catch the suspect in a crime." *Acosta*, 363 F.3d at 1145.

Because the officers knew that McCoy was a convicted felon, specific and articulable facts supported their reasonable belief upon seeing the firearm in the apartment that McCoy had committed or was committing the crime of possession of a firearm by a convicted felon. Accordingly, the officers had the requisite suspicion of criminal activity when they detained McCoy and conducted the pat-down. The district court did not err, therefore, by denying McCoy's motion to suppress the keys.

C. Sufficiency of the Evidence

McCoy next argues that the evidence was not sufficient to prove that he knowingly possessed the firearm. We review de novo whether there is sufficient evidence to support a conviction. *United States v. Charles*, 313 F.3d 1278, 1284 (11th Cir. 2002) (per curiam). In considering the sufficiency of the evidence, we view all of the evidence "in the light most favorable to the government, with all inferences and credibility choices drawn in the government's favor." *United States*

9

*v. LeCroy*, 441 F.3d 914, 924 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 2096

(2007). We "cannot reverse a conviction for insufficiency of the evidence unless

. . . we conclude that no reasonable jury could find proof beyond a reasonable

doubt." *United States v. Jones*, 913 F.2d 1552, 1557 (11th Cir. 1990). When,

however, a defendant fails to renew his motion for judgment of acquittal after all of

the evidence has been presented, reversal of the conviction is appropriate only to

prevent "a manifest miscarriage of justice." *United States v. Bender*, 290 F.3d

1279, 1284 (11th Cir. 2002).

"To establish a violation of Title 18, United States Code Section 922(g)(1),

the government must prove three elements: (i) that the defendant has been

convicted of a crime punishable by imprisonment for a term exceeding one year,

(ii) that the defendant knowingly possessed a firearm or ammunition, and (iii) such

firearm or ammunition was in or affected interstate commerce." *United States v.*

*Funches*, 135 F.3d 1405, 1406-07 (11th Cir. 1998). Because McCoy stipulated to

the first and third elements, the only issue is whether McCoy knowingly possessed

the firearm.

Possession, in the context of § 922(g)(1), "may be proven either by showing

that the defendant actually possessed the firearm, or by showing that he

constructively possessed the firearm." *United States v. Gonzalez*, 71 F.3d 819, 834

(11th Cir. 1996).  The government may prove constructive possession by showing that the defendant had unrestricted access over the premises where the contraband was located.  *See United States v. Harris*, 20 F.3d 445, 454 (11th Cir. 1994), *modified on other grounds*, *United States v. Toler*, 144 F.3d 1423 (11th Cir. 1998).  Furthermore, at least where some corroborative evidence of guilt exists for the charged offense, "a statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt."  *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995).  In other words, "when a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true."  *Id.* (internal quotation marks omitted).

Viewing the evidence in the light most favorable to the government, the evidence was sufficient to support the jury's conclusion that McCoy constructively possessed the firearm.  McCoy admitted that he was alone in the apartment, and the firearm was within his ready access near the couch on which he was resting.  Although McCoy testified that he did not know about the gun, the jury was free to disbelieve him and consider his testimony as substantive evidence of his guilt.  The jury could have reasonably inferred that McCoy was more than merely present in the apartment based on (1) the apartment keys found in his pocket; (2) the apartment manager's testimony that McCoy lived in the apartment; and (3) the

11

letter addressed to McCoy found in the kitchen. Furthermore, the jury could have reasonably inferred from the keys and his unaccompanied presence in the apartment that McCoy had unrestricted access to the apartment. Accordingly, because a reasonable jury could have found beyond a reasonable doubt that McCoy violated § 922(g), no miscarriage of justice occurred.

## D. Armed Career Criminal Determination

McCoy lastly argues that the district court violated his Fifth and Sixth Amendment rights when it found that he was an armed career criminal and imposed a sentence beyond the 10-year statutory maximum based on the court's determinations concerning his prior convictions.[2] McCoy acknowledges that we rejected an argument similar to his in *United States v. Greer*, 440 F.3d 1267 (11th Cir. 2006). He raises the argument, however, to preserve the issue in the event the Supreme Court overrules *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998).

We held in *Greer* that district judges may determine whether prior

---

[2] In support of his argument, McCoy cites the Supreme Court's recent decision in *Cunningham v. California*, — U.S. —, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007). In *Cunningham*, however, the Supreme Court reiterated the principle that "the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, *other than a prior conviction*, not found by a jury or admitted by the defendant." *Id.* at —, 127 S. Ct. at 860 (emphasis added). Accordingly, *Cunningham* does not affect the outcome here because it preserved the Supreme Court's exception for prior convictions.

12

convictions qualify as violent felonies under the Armed Career Criminal Act. *Greer*, 440 F.3d at 1275. In *Almendarez-Torres*, moreover, the Supreme Court held that a prior conviction is not a fact that must be admitted by a defendant or found by a jury beyond a reasonable doubt. *Almendarez-Torres*, 523 U.S. at 258, 118 S. Ct. at 1238. Furthermore, McCoy actually admitted at the sentencing hearing to the convictions that qualified him as an armed career criminal. Accordingly, the district court did not err by classifying McCoy as an armed career criminal.

## III. CONCLUSION

For the reasons set forth above, we conclude that the evidence was sufficient to support McCoy's conviction for possession of a firearm by a convicted felon, and that the district court did not err by denying McCoy's motion to suppress and classifying McCoy as an armed career criminal. Accordingly, we affirm.

**AFFIRMED.**