**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2649-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ALFONSO BOWEN, JR., a/k/a
EDDIE BARBOSA, EDDI
BARBOSA, ALFONSO BOWENS,
and JOSE BARETO,

     Defendant-Appellant.

_____

Argued January 30, 2024 – Decided April 23, 2024

Before Judges Rose and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 19-11-1200.

Oleg Nekritin argued the cause for appellant (Law Office of Robert J. De Groot, attorneys; Robert J. De Groot and Oleg Nekritin, of counsel and on the briefs).

Meagan E. Free, Assistant Prosecutor, argued the cause for respondent (Esther Suarez, Hudson County Prosecutor, attorney; Meagan E. Free, on the brief).

PER CURIAM

Following adverse decisions on various pretrial motions, defendant Alfonso Bowen, Jr. pled guilty to four offenses charged in four indictments pursuant to the terms of a global plea agreement. Pertinent to this appeal, defendant pled guilty to fourth-degree aggravated assault by pointing a firearm, N.J.S.A. 2C:12-1(b)(4), as amended from second-degree unlawful possession of a weapon without a carrying permit, N.J.S.A. 2C:39-5(b)(1), charged in count one of Hudson County Indictment No. 19-11-1200, and was sentenced to a five-year prison term with a five-year parole disqualifier under the Graves Act, N.J.S.A. 2C:43-6(c). The remaining seventeen offenses charged in the same indictment primarily included drug and weapons offenses, and were dismissed on the State's motion.[1]

On appeal, defendant challenges the denial of his motions: to suppress evidence seized following the warrantless entry into his apartment and issuance

---

[1] Under the negotiated plea agreement, defendant also pled guilty to two counts of third-degree possession of a controlled dangerous substance and fourth-degree stalking. In exchange, the State agreed to recommend concurrent prison terms of three years on the drug counts and eighteen months on the stalking offense, and dismissal of the remaining offenses charged in each unrelated indictment. None of these convictions is at issue in this appeal.

A-2649-21

of a warrant to search the premises, without an evidentiary hearing; for a Franks[2]

hearing; and for a spoliation of evidence ruling.  More particularly, defendant

raises the following points for our consideration:

> I. The court committed reversible error when it denied . . . [d]efendant's motion to suppress evidence obtained in violation of the [Fourth] Amendment.
>
> II. The [c]ourt improperly ruled that the State had articulable suspicion to conduct a protective sweep of the property.
>
> III. The trial court failed to suppress evidence discovered as a result of an improperly issued [w]arrant, as it was based on an affidavit containing unlawfully obtained evidence.
>
> IV. The [c]ourt committed reversible error when it failed to find spoliation of evidence resulting from the State producing only a portion of the video showing the shooting.
>
> V. The [c]ourt improperly ruled without providing [defendant] a plenary hearing.
>
> VI. The court improperly denied . . . [d]efendant's request for a Franks [h]earing.

---

[2] Franks v. Delaware, 438 U.S. 154 (1978).  A defendant is entitled to a Franks hearing to challenge the veracity of a search warrant affidavit by demonstrating a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause."  Id. at 155-56; see also State v. Howery, 80 N.J. 563, 567-68 (1979) (adopting the Franks standard in New Jersey).

A-2649-21

Persuaded by the contentions raised in points II and V, we conclude the court erroneously determined police lawfully entered defendant's residence without a warrant under the protective sweep doctrine, and should have held a plenary hearing regarding the application of the emergency aid exception to the warrant requirement. We therefore remand the matter for a limited hearing on the arguments raised in points I, II, and III. We reject defendant's claims asserted in points IV and VI, finding insufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(2), beyond the brief comments that follow. Accordingly, we affirm in part, reverse in part, and remand in part.

## I.

Before considering defendant's arguments, however, we note he does not challenge the legality of the five-year prison sentence imposed on his fourth-degree conviction. Nor does the State address this issue.

Apparently focused solely on the court's decision regarding the admissibility of the evidence seized at defendant's residence and the video footage related to his aggravated assault conviction, the parties did not provide the transcripts of the plea and sentencing hearings, the presentence report, the three unrelated indictments, or the unrelated judgments of conviction. Based on the limited record provided on appeal, however, it appears defendant's sentence

to a five-year prison term with a five-year parole disqualifier exceeds the maximum sentence for a fourth-degree Graves Act offense. See N.J.S.A. 2C:43-6(a)(4) (providing an eighteen-month maximum term of imprisonment for a fourth-degree conviction); N.J.S.A. 2C:43-6(c) (providing an eighteen-month maximum parole disqualifier for a fourth-degree Graves Act offense).

As defendant's sentence "exceed[s] the penalties authorized for a [fourth-degree] offense," his sentence appears to be illegal. State v. Hyland, 238 N.J. 135, 145 (2019). Ordinarily, a remand for resentencing is required. See State v. Romero, 191 N.J. 59, 80-81 (2007); see also State v. Murray, 162 N.J. 240, 247 (2000) (recognizing an illegal sentence "may be corrected at any time before it is completed"). Because we have not been provided the full record of the proceedings, however, it is unclear whether the propriety of defendant's sentence was raised before the trial court.

Accordingly, we remand for clarification of the record, or resentencing and issuance of an amended judgment of conviction, if warranted. On remand, the trial court shall address the legality of defendant's sentence issue before conducting an evidentiary hearing on defendant's suppression motion.

A-2649-21

II.

We summarize the pertinent facts and procedural history from the limited record provided on appeal. That record includes the parties' trial court briefs and appendices, which annexed several police reports and the search warrant affidavit supporting the warrant issued in this matter.[3]

The charges emanated from a shooting incident during the morning of August 19, 2019, outside defendant's home in Union City. The State alleged Joel Vargas shot defendant in the thigh, fled the scene in his car, tossed the gun down a sewer, and confessed to his long-time friend, a Union City police officer. At the time of the shooting, Ashley Ramos, defendant's girlfriend and Vargas's co-parent, allegedly sought refuge from Vargas at defendant's house prior to the incident. Ramos heard the gunshots from the basement of defendant's home.[4]

---

[3] See R. 2:6-1(a)(2) (permitting the inclusion of trial court briefs if referenced in the court's decision or "the question of whether the issue was raised in the trial court is germane to the appeal").

[4] We glean from the record that Vargas was charged in a separate indictment; the disposition of those charges is not disclosed in the record. Ramos was charged with one count of hindering apprehension in the same indictment as defendant; the outcome of her charge is not disclosed in the record. Neither Vargas nor Ramos is a party to this appeal.

A-2649-21

Police were first called to the scene shortly before 11:00 a.m. Officer Nunez and a sergeant were the first to arrive on the scene.[5] According to her report, Nunez observed defendant "sitting on the top of the front porch with a bullet wound to his left thigh and bleeding." In his report, Officer H. Rodriguez stated he arrived with Officer Sanchez and saw Nunez "running up to the scene with her first aid bag." H. Rodriguez assisted Nunez until defendant was transported to the hospital.

Thereafter, Detective Polo, a crime scene investigator, responded to the incident with four other detectives. According to his report, Polo spoke with Officers Pina and A. Rodriguez, who "stated that when they arrived on scene they noticed what appeared to be a male party with a shot [sic] wound on his left thigh area inside of the [residence] in the rear apartment." After the ambulance transported defendant to the hospital, Polo "began to photograph the entire apartment, following the blood trail and also in an attempt to render aid to anyone in the apartment." While photographing the blood spatters in defendant's bedroom, Polo observed narcotics and drug paraphernalia. At some point thereafter, A. Rodriguez arrested defendant at the hospital and charged him with narcotics offenses.

---

[5] We use the officers' surnames unless they share the same last name.

A-2649-21

Sometime after noon, law enforcement reviewed and, using a police cell phone, recorded a segment of footage from a neighbor's surveillance video; police did not obtain the original footage. The ninety-second segment depicted the shooting and – what police perceived was – defendant "reach[ing] for his waist band and . . . display[ing] a weapon."

Around 12:40 p.m., Ramos gave an audio-recorded statement to Polo at the hospital. Ramos recounted the argument she had with Vargas that morning concerning her relationship with defendant. Contending Vargas "broke into her home," Ramos said she escaped and called defendant, who brought her to his residence. Vargas thereafter telephoned defendant; a verbal argument ensued; Vargas came to defendant's home; and Ramos heard eight gunshots and saw defendant "running into the house with a gun[]shot wound on his leg." Fearing Vargas was following, Ramos ran to the basement.

That evening, police obtained a warrant to search defendant's home and Vargas's car. The same affidavit supported both warrants. According to the affiant, "Polo entered the residence to ascertain whether there were other victims. He observed a blood trail from the front porch that led to both the basement door and the door of [defendant's a]partment." Police executed the

warrant for defendant's home and seized the contraband Polo observed during his walkthrough, and a firearm in the basement.

After defendant was indicted, his first attorney moved to suppress the evidence seized from his apartment, only challenging the sufficiency of the search warrant affidavit and the scope of the search. Following oral argument, the court issued a written statement of reasons and memorializing April 9, 2020 order. Although defendant did not challenge Polo's entry into the home, in a footnote the court stated: "Based on the facts set forth by all, it appears clear that the circumstances supported Polo's entry into the residence as emergency aid."

Thereafter, defendant retained another attorney, who moved for various relief including reconsideration of the April 9 order and compulsion of the full, original video footage from the neighbor's surveillance camera. Addressing the footnote in the court's decision, defendant argued under two then-recent decisions, the United States Supreme Court's decision in Caniglia v. Strom, 593 U.S. 194 (2021) (considering the community caretaker doctrine), and our decision in State v. Radel, 465 N.J. Super. 65 (App. Div. 2020), aff'd 249 N.J. 469 (2022) (regarding the protective sweep doctrine), Polo was not lawfully on the premises when he observed drugs in defendant's bedroom.

Citing "conflicting police reports as to where [defendant] was found when police arrived," defendant requested a plenary hearing. Apparently referencing Nunez's and Polo's reports, defendant claimed: "One report states that he was on his front porch. Another states that he was inside the home." Defendant argued after he was removed from the scene police "did not have any basis to believe that anyone in the home required additional aid." According to defendant, there was no emergency justifying Polo's warrantless entry.

On August 30, 2021, the court issued a written decision and memorializing order granting the reconsideration motion regarding the warrantless entry into defendant's home, in view of the Court's decision in Caniglia. But the court denied defendant's motion for the video recording, among other relief that is not pertinent to this appeal.

Regarding the video, the court was not persuaded by defendant's contention that the entire video surveillance footage, depicting how long the officers were on the scene before entering his home, was "relevant to determine the timeline and proximity from the emergent response to the commencement of the search." Defendant also sought the original recording to enhance the footage so he could "determine whether the object in [his] hand [wa]s a firearm or a cell phone." Accepting the State's proffer that it had provided defendant "the full

copy of the video" in its possession, the court rejected defendant's contention that the State's <u>Brady</u>[6] obligations were triggered. Nor was the court persuaded that the indictment should be dismissed "due to spoliation" for failure to produce the full video.

On October 7, 2021, the court held oral argument on defendant's suppression motion. Defendant primarily argued police unlawfully entered his apartment and, as such, the State lacked probable cause to support the search warrant. Noting Polo's purpose was "process[ing] the scene for evidence and . . . taking photographs" after other officers had attended to defendant, defendant maintained the State failed to demonstrate Polo's warrantless entry was justified under the emergency aid or the protective sweep doctrines. Defendant renewed his request for a plenary hearing.

In response, among other arguments, the State countered defendant's "discrepancies amongst the police reports" and Polo's "misstatements . . . seem[] like a <u>Franks</u> argument." However, even if any misstatements "were excised from the warrant," police had probable cause to support the warrant based on the blood trail and defendant's access to the basement. <u>See</u> <u>State v. Howery</u>, 80

---

[6] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) (requiring the State to disclose exculpatory evidence to the defense).

N.J. 563, 568 (1979) (holding a <u>Franks</u> hearing is not required if a search warrant affidavit contains sufficient facts establishing probable cause even after the alleged false statements are excised).

On November 19, 2021, the court issued a written decision and memorializing order, denying defendant's suppression motion. The court found the warrantless entry into defendant's residence was justified under both the emergency aid and protective sweep doctrines, and that the Court's decision in <u>Caniglia</u> was not applicable here. The court denied defendant's motion without addressing his request for a plenary hearing.

III.

Well-settled principles guide our review. When the trial court holds an evidentiary hearing on a motion to suppress evidence, we are bound to uphold the court's factual findings if they "are 'supported by sufficient credible evidence in the record.'" <u>State v. Evans</u>, 235 N.J. 125, 133 (2018) (quoting <u>State v. Elders</u>, 192 N.J. 224, 243 (2007)). We are further obliged to defer to findings based on the court's "review of documentary or video evidence." <u>State v. Carrillo</u>, 469 N.J. Super. 318, 332 (App. Div. 2021). "We do so to for institutional reasons: to recognize the trial court's 'experience and expertise in fulfilling the role of factfinder'; to maintain trial courts' 'legitimacy'; and to avoid duplicating efforts

without significantly improving decisional accuracy." Ibid. (quoting State v. S.S., 229 N.J. 360, 380-81 (2017)).

However, we owe no deference to a court's findings that are based on the arguments of counsel or the unsupported "factual allegations in a brief." Id. at 333. That is because such allegations are "not evidence, documentary or otherwise." Ibid. Nor do we defer to a court's decision that there is no need for an evidentiary hearing on a suppression motion, based on a determination – made after a review of the parties' briefs – that there are no "material facts" in dispute. Ibid. "Determining . . . if facts are in dispute is a matter of law" that may be made by "examin[ing] side-by-side the parties' allegations." Ibid. The determination of whether facts in dispute also presents issues of law we review de novo. Ibid.

Rule 3:5-7(c) mandates a testimonial suppression hearing when material facts are in dispute. See State v. Parker, 459 N.J. Super. 26, 30 (2019); State v. Green, 346 N.J. Super. 87, 90 (App. Div. 2001). As the Court has reaffirmed, an evidentiary hearing is "[t]he proper mechanism through which to explore the constitutionality of warrantless police conduct." State v. Atwood, 232 N.J. 433, 445 (2018); see also N.J.R.E. 104. "At evidentiary hearings, the State presents witnesses to substantiate its basis for the challenged warrantless conduct, and

the defense is afforded the opportunity to confront and cross-examine the State's witnesses." Ibid. Further "N.J.R.E. 104 hearings provide an opportunity to probe adverse evidence through cross-examination." Ibid. Thus, New Jersey "courts have recognized the importance of the ability to question witnesses in case of factual disputes." Ibid.

Notably, Rule 3:5-7(b) "does not require defendants to file an affidavit in order to be entitled to a hearing on a motion to suppress evidence obtained as a result of a warrantless search." State v. Torres, 154 N.J. Super. 169, 173 (App. Div. 1977). But the defendant's counterstatement of facts must assert more than "[t]he mere allegation of a warrantless search, with the attendant burden of proof on the State to justify same," or mere denial of "the truth of the State's allegations." Green, 346 N.J. Super. at 91.

## A.

The trial court found persuasive the State's argument that the emergency aid and protective sweep exceptions to the warrant requirement applied in this case – based on the police reports and search warrant affidavit. In his written decision, the judge set forth the governing legal principles for warrantless searches and both exceptions. Accordingly, we need only summarize the principles, adding recent authority.

14

When exigent circumstances are present, "[p]olice officers serving in a community-caretaking role are empowered to make a warrantless entry into a home under the emergency-aid exception to the warrant requirement." State v. Vargas, 213 N.J. 301, 323 (2013). The State must demonstrate "(1) the officer had 'an objectively reasonable basis to believe that an emergency require[d] that he [or she] provide immediate assistance to protect or preserve life, or to prevent serious injury' and (2) there was a 'reasonable nexus between the emergency and the area or places to be searched.'" State v. Edmonds, 211 N.J. 117, 132 (2012) (quoting State v. Frankel, 179 N.J. 586, 600 (2004)).

"The emergency-aid doctrine . . . must be 'limited to the reasons and objectives that prompted' the need for immediate action." Id. at 134 (quoting Frankel, 179 N.J. at 599). "If, however, contraband is 'observed in plain view by a public safety official who is lawfully on the premises and is not exceeding the scope of the search,' that evidence will be admissible." State v. Hathaway, 222 N.J. 453, 470 (2015) (quoting Frankel, 179 N.J. at 599-600).

B.

In a non-arrest incident, such as this case, our Supreme Court has "placed strict limits on the scope of the protective-sweep doctrine." State v. Radel, 249 N.J. 469, 495 (2022) (citing State v. Davila, 203 N.J. 97, 102-03 (2010)). Thus,

"A protective sweep may only occur when (1) police officers are lawfully within private premises for a legitimate purpose, which may include consent to enter; and (2) the officers on the scene have a reasonable articulable suspicion that the area to be swept harbors an individual posing a danger." Davila, 203 N.J. at 102.

After the trial court issued its decision in the present matter, the Court in Radel held:

> First, when an arrest occurs outside a home, the police may not enter the dwelling or conduct a protective sweep in the absence of a reasonable and articulable suspicion that a person or persons are present inside and pose an imminent threat to the officers' safety. See, e.g., United States v. Lawlor, 406 F.3d 37, 41 (1st Cir. 2005); United States v. Colbert, 76 F.3d 773, 776-77 (6th Cir. 1996). Entering a home to conduct a protective sweep when an arrest is made outside a dwelling should be the rare circumstance, in light of the special constitutional protections afforded the home. Nevertheless, when objective facts provide the police with a reasonable and articulable suspicion that their lives may be placed in imminent danger by a person or persons inside the home, officers will be justified in entering the dwelling to carry out a protective sweep to safeguard their lives.
>
> Second, this sensible balancing of the fundamental right to privacy in one's home and the compelling interest in officer safety will depend on an objective assessment of the particular circumstances in each case, such as the manner of the arrest, the distance of the arrest from the home, the reasonableness of the

16

officers' suspicion that persons were in the dwelling and likely to launch an imminent attack, and any other relevant factors. A self-created exigency by the police cannot justify entry into the home or a protective sweep. See Davila, 203 N.J. at 97.

[Radel, 249 N.J. at 477-78 (third citation reformatted).]

## C.

Applying these legal principles here, we are satisfied a plenary hearing is warranted to resolve material, disputed facts regarding the emergency aid exception to the warrant requirement. On appeal, defendant reprises his contention that the police reports reveal discrepancies, which bear upon whether Polo "had an objectively reasonable basis," Edmonds, 211 N.J. at 132, to enter his residence to provide emergency aid to an occupant. Specifically, Nunez's report indicates she saw defendant "sitting on top of the front porch," while Polo's report indicates he spoke with Pina and A. Rodriguez, who told him they observed defendant "inside of the [residence] in the rear apartment."

These seemingly contradictory facts, and the inferences that can be drawn therefrom, warrant a testimonial hearing to clarify whether police had already entered the apartment before Polo arrived and, if so, whether any other officers walked through the premises to ensure no one else needed aid. Resolution of

17

these facts will determine whether Polo's warrantless entry of the premises was permitted under the emergency aid doctrine.

On the existing record, we are not persuaded the protective sweep doctrine applies here. According to the police reports, defendant was arrested at the hospital – after he had been removed from the scene and the drugs were found in his apartment. The State asserted Polo entered the apartment alone, to collect and photograph evidence and render emergency aid. There is no indication in any of the police reports that Polo entered defendant's home because he feared an assailant or danger was present. On these facts, the State did not establish Polo had "a reasonable and articulable suspicion" that someone inside posed an "imminent danger" to his life, which would otherwise justify entering defendant's "home to conduct a protective sweep." See Radel, 249 N.J. at 477. We therefore conclude Polo's entry was not justified under the protective sweep doctrine.

IV.

Defendant's argument that the search warrant affidavit was based on unlawfully obtained evidence also must await the court's decision following the plenary hearing. On this point, we note the court did not reach the State's alternate argument that even if certain facts were excised from the affidavit, the

18

State had probable cause for issuance of the warrant. Because the State raised the issue before the trial court, on remand, the court may consider the State's argument, if renewed.

V.

Little need be said regarding defendant's argument that the court erroneously denied his request for the full, original surveillance footage regarding the incident and a <u>Franks</u> hearing was necessary to explore the "potential conflict of interest between the police and Vargas." We affirm for the sound reasons articulated by the trial court.

We add only defendant has not cited, nor has our research revealed, any authority stating police are obligated to gather video evidence depicting their response to a crime scene after the incident unfolded. On remand, defendant is free to explore the timeline of events during the testimonial hearing. Similarly, we have been presented with no authority supporting defendant's argument for a <u>Franks</u> hearing.

Affirmed in part, reversed in part, and remanded in part for a plenary hearing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2649-21