NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2013-757


THE STATE OF NEW HAMPSHIRE

v.

TANEAL C. BROADUS

Argued: October 16, 2014
Opinion Issued: January 22, 2015


Joseph A. Foster, attorney general (Stephen D. Fuller, senior assistant attorney general, on the brief and orally), for the State.


Stephanie Hausman, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.


DALIANIS, C.J. Following a bench trial, the defendant, Taneal C. Broadus, was convicted on one felony count of possession of oxycodone, one felony count of possession of codeine, and one misdemeanor count of possession of marijuana. See RSA 318-B:2 (Supp. 2014). On appeal, she challenges only her felony convictions, arguing that the Superior Court (Wageling, J.) erroneously denied her motion to suppress evidence of the oxycodone and codeine obtained during an unconstitutional search. We vacate and remand.

The following facts are derived from the trial court's order denying the defendant's motion to suppress or otherwise appear in the record. On a night in October 2011, New Hampshire State Trooper Matthew Locke stopped a vehicle in Auburn after having observed the driver discard a lit cigarette. Upon approaching the vehicle, Locke smelled the odor of freshly burned marijuana emanating from it. Locke determined that both occupants had valid licenses and that neither had an outstanding warrant. The defendant was the passenger. The driver admitted to littering. The driver also told Locke that she and the defendant were returning home from a friend's house in Manchester.

At Locke's request, the driver exited the vehicle. Locke then asked her about the marijuana odor. She stated that she and the defendant had smoked marijuana about one hour earlier but denied using marijuana in the car. The driver also initially denied the existence of illegal drugs in the vehicle, but eventually admitted that there was a "marijuana roach" behind the driver's seat. The driver retrieved the "roach" and handed it to Locke.

Locke then asked the defendant to step out of the vehicle. As she exited, Locke noticed a beer bottle on the floor where her feet had been. He took the bottle and observed that it was open, smelled of beer, and was cool to the touch. The defendant denied consuming alcohol in the vehicle; Locke believed that statement to be a lie.

Throughout this period of time, Locke observed that the defendant had refrained from making eye contact with him. Even when Locke asked for her identification, she stared straight ahead. The defendant was also wearing extremely baggy jeans and a sweatshirt. Although Locke had called for backup, it was approximately twenty minutes away from his location. The defendant denied having any weapons.

Locke then performed a pat-down search, also known as a "frisk." During the frisk, Locke felt an object in the shape of a prescription pill bottle in the defendant's pocket. Locke testified that, based upon his experience, individuals often concealed weapons, like razor blades, in such bottles. Locke asked the defendant about the bottle, and she responded that the pills were for her migraine headaches. The defendant complied with Locke's request to hand him the bottle. Locke observed that it contained six pills and that its label indicated a prescription for someone other than the defendant. The defendant then admitted that she did not have a prescription for the pills, which were later identified as oxycodone and codeine.

Locke arrested the defendant for possession of a narcotic drug and the driver for possession of marijuana. See RSA 318-B:2. Locke later testified that, if he had not arrested the defendant for possession of a narcotic drug, she and the driver "would've been arrested" because "probable cause had been

2

established that there'd been possession of marijuana and both had used it previously as well as an open container violation."

Before trial, the defendant moved to suppress the pills, arguing that the frisk was unconstitutional. See N.H. CONST. pt. I, art. 19; U.S. CONST. amends. IV, XIV. Following a hearing, the trial court denied the motion. The trial court first concluded that, based upon the totality of the circumstances, "Trooper Locke was justified in performing a frisk of Defendant to dispel his concern that she may have been in possession of a weapon." The court further determined that "[e]ven if Trooper Locke was not justified in performing a frisk," the "evidence need not be suppressed" because Locke "would have been justified in arresting Defendant for possession of a controlled substance for the marijuana and violation of the open container law." Therefore, the trial court reasoned that the pills would have been "inevitably discovered" when the defendant was searched incident to the arrest. The defendant was convicted on three counts of possession of a controlled drug – oxycodone, codeine, and marijuana, see RSA 318-B:2 – and this appeal followed.

The defendant first argues that the trial court erred in denying her motion to suppress because Locke lacked a reasonable belief that she was armed and presently dangerous as is required to justify the frisk that led to the discovery of the pills. See State v. Michelson, 160 N.H. 270, 272-73 (2010). The defendant also argues that the trial court erred in determining that the pills would inevitably have been discovered upon a search incident to arrest for marijuana possession and/or an open container violation. See State v. Holler, 123 N.H. 195, 200 (1983).

We first address the defendant's arguments under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983). "In reviewing the trial court's ruling, we accept its factual findings unless they lack support in the record or are clearly erroneous." State v. Perri, 164 N.H. 400, 411 (2012). "The application of the appropriate legal standard to those facts, however, is a question of law, which we review de novo." Id. (quotation omitted).

Regarding the defendant's first argument, "[o]nce an officer is justified in making an investigatory stop, he may also conduct a protective frisk if the officer reasonably believes the individual is armed and presently dangerous." Michelson, 160 N.H. at 272 (quotation omitted). "The purpose of a protective frisk is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence." Id. (quotation and brackets omitted). "Therefore, the frisk must be strictly confined to what is minimally necessary to discover the presence of a weapon." Id. (quotation omitted).

The defendant does not dispute the legality of the initial traffic stop for littering. See id. at 273. Instead, she argues that Locke was not justified in

3

frisking her because, based upon the totality of circumstances, he had no reasonable suspicion that she was armed and presently dangerous. See id. The State argues otherwise.

"To determine the sufficiency of an officer's suspicion, we consider the articulable facts in light of all surrounding circumstances, keeping in mind that a trained officer may make inferences and draw conclusions from conduct that may seem unremarkable to an untrained observer." Id. (quotation omitted). In making this determination, we do not consider each fact in isolation or necessarily compare the facts to another case. See State v. Turmel, 150 N.H. 377, 381 (2003). "A reasonable suspicion must be more than a hunch and the articulated facts must lead somewhere specific, not just to a general sense that this is probably a bad person who may have committed some kind of crime." Michelson, 160 N.H. at 273 (quotations and brackets omitted). "The officer's suspicion must have a particularized and objective basis in order to warrant that intrusion into protected privacy rights." Id. (quotation omitted).

We conclude from the totality of the circumstances that the frisk in this case was not supported by particularized and objective facts sufficient to give rise to a reasonable suspicion that the defendant was armed and presently dangerous. See id. at 272-73. Here, neither the defendant nor the driver was suspected of having committed, or being about to commit, a violent offense. Further, the defendant had no outstanding warrants, complied with Locke's requests during the stop, and made no threatening or furtive movements during the stop. Moreover, the stop did not occur in a high crime area.

Indeed, Locke's own testimony establishes that there was no objective basis to believe that the defendant was armed and presently dangerous.

Q   And had you received any reports of violent crimes in the area that night?

A   In that particular area?  No.

Q   Any reports of weapons being used in any crimes?

A   No.

Q   Reports of robberies or fights?

A   No.

Q   And when you got to the car, did you see anything in the car that would . . . cause you concern in terms of your safety?  Any baseball bats?  Anything . . . like that?

4

A   No.

Q   No guns or swords or knives?

A   No.

Q   Okay.  And you had testified that [the defendant] had looked forward, I guess, and not making eye contact with you?

A   Correct.

Q   And that was something that caused you concern?

A   Yes.

Q   But you also testified in general, or at least I got it from your testimony, that she was generally compliant with all [of] your requests?

A   Yes.

Q   When you came up to the door [of the car], there was no sort of quick movements for anything that might be hidden?

A   No.

Q   No reaching behind the seat or under the seat?

A   No, not that I observed.

Q   And she produced her license and identification when you asked her to?

A   Yes.

Q   She got out of the car when you asked her to?

A   Yes.

Q   She didn't yell at you or threaten you in any way?

A   No.

Q   She didn't come at you or charge or raise her hand to you?

A   No.

Q   You had also testified that this area, I guess of [Route] 101, is considered a high-crime area?

A   Not specifically.  I said the city of Manchester . . . .

To justify the frisk, the State relies upon only three facts that are specific to the defendant: (1) Locke believed that the defendant lied when she denied drinking alcohol in the vehicle; (2) she did not maintain eye contact with Locke; and (3) she wore baggy clothes.  None of these facts, alone or together, could have supported a reasonable suspicion that the defendant was armed and presently dangerous.  Although Locke believed that the defendant lied, her lie concerned consuming alcohol, not her involvement in violent activity or possession of weapons.  See id. at 273 (holding that officer had reasonable suspicion to justify protective frisk when defendant admitted to having been involved in a fight, had blood on his nose, had a baseball bat in his car, and gave an unclear response about whether he had any other weapons).  Moreover, because "[m]ost people, when confronted by a police officer, are likely to act nervous[] [and] avoid eye contact, . . . such behaviors [are] of very little import to a reasonable suspicion determination" that the defendant was armed and presently dangerous.  United States v. Williams, 731 F.3d 678, 687 (7th Cir. 2013).  Finally, nothing about the defendant's "attire alone could tell the officer[] anything about [her], except that [s]he liked to wear baggy clothing." State v. Miglavs, 90 P.3d 607, 613 (Or. 2004).

The other facts upon which the State relies are not specific to the defendant.  The State argues that the frisk was justified because Locke was outnumbered by the vehicle's occupants and that his "backup" was not "immediately available."  However, these facts do not create particularized reasonable suspicion that the defendant was armed and presently dangerous. See In re Mario T., 875 N.E.2d 1241, 1250 (Ill. App. Ct. 2007) (holding that, although being outnumbered is a factor to consider, "more is required than merely counting heads[;] [a]n officer must reasonably suspect that he is in danger of attack, before he may search the person for weapons" (quotation, brackets, and ellipsis omitted)).  Although we appreciate that officer safety is of paramount concern, the goal of ensuring officer safety does not vitiate the requirement that an officer have an objective basis to believe that a subject is armed and presently dangerous before initiating a frisk.  See Michelson, 160 N.H. at 272; see also Miglavs, 90 P.3d at 613 (explaining that "[a] police officer's suspicion must be particularized to the individual based on the individual's own conduct").

Taking all of the circumstances in this case into account, we conclude that Locke did not have a particularized and objective basis for believing that the defendant was armed and presently dangerous.  We hold, therefore, that the trial court erroneously concluded that the frisk was valid.  Because the

defendant prevails under the State Constitution, we need not reach her federal claim.  See Ball, 124 N.H. at 237.

We next address whether the inevitable discovery doctrine applies to the discovery of the pills.  Under the inevitable discovery doctrine, "illegally seized evidence is admissible if a search was justified, and the evidence discovered illegally would inevitably have come to light in a subsequent legal search." Holler, 123 N.H. at 200.  The State argues that the doctrine applies because: (1) there was probable cause to arrest the defendant for possession of marijuana and the open container violation; (2) Locke testified that he "would've" arrested her had he not arrested her for possessing the pills; and (3) had the defendant been arrested, she would have been searched and the pills would have been found.  To counter the State's arguments, the defendant contends that there was no probable cause to arrest her for possessing marijuana.  She also argues that, to satisfy the inevitable discovery doctrine, there must have been a "substantial and articulable likelihood" that she would have been arrested and that Locke's testimony does not meet that standard. See United States v. Heath, 455 F.3d 52, 62 n.12 (2d Cir. 2006).

We have not had prior occasion to decide what the State must prove in order for the inevitable discovery doctrine to apply.  Federal circuit courts of appeal are divided.  See, e.g., United States v. Zavala, 541 F.3d 562, 579 (5th Cir. 2008) (holding that to satisfy the inevitable discovery doctrine, the government must show that there was a "reasonable probability" that the evidence would have been discovered by lawful means and that the government was "actively pursuing a substantial alternate line of investigation at the time of the constitutional violation"); Heath, 455 F.3d at 60 (concluding "that illegally-obtained evidence [is] admissible under the inevitable discovery [doctrine] . . . only where a court can find, with a high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor"); United States v. Almeida, 434 F.3d 25, 28-29 (1st Cir. 2006) (deciding that for inevitable discovery doctrine to apply, the government must demonstrate that "the legal means by which the evidence would have been discovered was truly independent," that there was "a high degree of probability" that the evidence would have been discovered by such means, and that applying the inevitable discovery rule would not "provide an incentive for police misconduct or significantly weaken constitutional protections").

The trial court made no legal rulings or factual findings on this issue.  It found only that "Locke would have been justified in arresting Defendant for possession of a controlled substance . . . and violation of the open container law."  In other words, as the defendant correctly notes, the trial court found only that Locke "could have" arrested her; it did not decide how likely it was that Locke "would have" arrested her.  Nor does it appear that the parties fully litigated in the trial court how probable the defendant's arrest would have to be

in order to satisfy the inevitable discovery doctrine. Moreover, the parties did not develop a sufficient factual record regarding the likelihood of the defendant's arrest. Under these circumstances, we decline to decide this issue in the first instance and remand to the trial court to do so upon further proceedings consistent with this opinion. On remand, even though the defendant did not appeal her conviction for marijuana possession, she may argue, as she has on appeal, that the oxycodone and codeine would not have been "inevitably discovered," in part, because there was no probable cause to arrest her for possession of marijuana.

Vacated and remanded.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.