NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough - northern judicial district
No. 2013-747


THE STATE OF NEW HAMPSHIRE

v.

MICHAEL FRANCIS

Argued: November 13, 2014
Opinion Issued: May 12, 2015


Joseph A. Foster, attorney general (Geoffrey W.R. Ward, assistant attorney general, on the brief and orally), for the State.


Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.


BASSETT, J. The defendant, Michael Francis, appeals his conviction of possession of heroin with the intent to dispense. See RSA 318-B:2 (Supp. 2012) (amended 2013). He argues that: (1) the Superior Court (Brown, J.) erred in denying his motion to suppress evidence obtained from a search of a vehicle; and (2) the Superior Court (Mangones, J.) erred in denying his motion to dismiss based upon insufficient evidence that he possessed the heroin found in the vehicle. We affirm.

The following facts are drawn from the trial court order on the defendant's motion to suppress, are supported by the record, or are undisputed by the parties. At 5:30 p.m. on January 3, 2013, Detectives Gonzales and Donahue of the Manchester Police Department were told that the defendant was wanted for a parole violation, that he was dealing drugs at a Maple Street residence in Manchester, and that he might be armed. Gonzales and Donahue conducted surveillance of the Maple Street residence in an attempt to locate the defendant in order to arrest him for the parole violation. They observed several individuals entering a Ford Expedition, a large sport utility vehicle (SUV), which then drove off. The detectives identified one of the individuals as the defendant based upon his facial appearance and the tattoo on the side of his neck. Because the area was not well-lit, the detectives could not determine the exact number of people in the SUV or whether they had anything in their hands. Gonzales and Donahue followed the SUV and called for assistance. Two officers responded and stopped the vehicle.

Gonzales and Donahue, accompanied by the other officers, approached the stopped vehicle with their firearms drawn, and ordered each occupant out of the SUV, one at a time. The defendant, who sat behind the front passenger seat, was the last person to leave the vehicle, exiting approximately 30 to 45 seconds after the other occupants. The four individuals who exited the vehicle were found to be unarmed. However, because Gonzales was unable to see through the SUV's tinted and dirty windows, he was unsure whether any other persons remained in the vehicle. Therefore, the officers decided to "clear" the vehicle to ensure that a potentially dangerous person did not remain inside the SUV.

Without obtaining either consent or a warrant, Gonzales entered the SUV. With his gun drawn, he "flipped" the seats and looked underneath them to determine whether anyone was lying down in the SUV. During the sweep, Gonzales observed a partially-opened red backpack on the floor in front of the defendant's seat. Gonzales could see the top of a semi-automatic handgun inside the backpack. The "clear" took a total of eight to ten seconds.

After Boulanger, the owner of the SUV, refused to consent to a vehicle search, the vehicle was seized and a search warrant was obtained. During the search of the SUV, Gonzales found heroin under the driver's seat. Upon searching the red backpack, Gonzales found a handgun, a box of sandwich bags, and two digital scales, one of which tested positive for heroin residue. The defendant was arrested and charged with, among other things, possession of heroin with the intent to dispense.

Before trial, the defendant moved to suppress evidence seized from the SUV, alleging that the protective sweep was a warrantless search in violation of the New Hampshire and United States Constitutions. See N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV. The trial court denied the motion, finding

that the evidence was "admissible pursuant to the protective sweep, exigent circumstances, and plain view exceptions to the warrant requirement."

Two of the vehicle's occupants testified at trial. Boulanger testified that he met the defendant and the other passengers at the Maple Street residence to give them a ride. Boulanger understood that "they would take care of [him]," which he testified meant that they would give him heroin in exchange for driving. Additionally, Cyr, another passenger in the vehicle, testified that immediately after the SUV was stopped, the defendant told Boulanger, "Don't let them search the vehicle."

At the close of evidence, the defendant moved to dismiss the possession of heroin with intent to dispense charge, arguing that the State did not present sufficient evidence linking him to the heroin "that was found under the driver's seat." The trial court denied the motion. The jury convicted the defendant of possession of heroin with the intent to dispense. This appeal followed.

I.  Motion to Suppress

The defendant argues that the trial court erred by denying his motion to suppress because the police lacked a reasonable belief that:  (1) there was another person in the vehicle; and (2) any person remaining in the vehicle posed a risk of danger. Accordingly, the defendant contends that the protective sweep violated his rights under Part I, Article 19 of the New Hampshire Constitution and the Fourth Amendment to the United States Constitution. See State v. Smith, 141 N.H. 271, 274-77 (1996); Maryland v. Buie, 494 U.S. 325, 327 (1990).

When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous, and we review its legal conclusions de novo. State v. Schulz, 164 N.H. 217, 221 (2012). We first address the issues under the State Constitution and rely upon federal law only to aid in our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

Part I, Article 19 of the New Hampshire Constitution provides that "[e]very subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." N.H. CONST. pt. I, art. 19. "A warrantless search is per se unreasonable and invalid unless it comes within one of a few recognized exceptions." State v. Graca, 142 N.H. 670, 673 (1998) (quotation omitted). "Absent a warrant, the burden is on the State to prove that the search was valid pursuant to one of these exceptions." Id. (quotation omitted).

One such exception is known as a protective sweep, which is intended to ensure that law enforcement officers can "protect themselves from harm" at the

scene of an arrest.  Smith, 141 N.H. at 276.  "A 'protective sweep' is a quick and limited search of premises."  Buie, 494 U.S. at 327.  "[It] occurs as an adjunct to the serious step of taking a person into custody for the purpose of prosecuting him for a crime."  Id. at 333.  Fundamental to any protective sweep is the officer's concern that there may be other persons present "who are dangerous and who could unexpectedly launch an attack."  Id.

In Maryland v. Buie, the United States Supreme Court stated that "as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched."  Id. at 334.  The Court added that, if a search extends beyond the "spaces immediately adjoining the place of arrest," an officer "must [have] articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."  Id.

In State v. Smith, we adopted the second protective sweep standard articulated in Buie, observing that "[o]ur constitution should not be interpreted to deny police officers the right to protect themselves from harm."  Smith, 141 N.H. at 276.  We stated that a protective sweep performed pursuant to this standard "correctly balances the need to search against the invasion which the search entails."  Id.

We have not yet addressed whether a protective sweep performed without probable cause or reasonable suspicion — the first standard articulated in Buie — is permitted under our State Constitution, and we need not consider the issue in this case because the State conceded at oral argument that it did not raise the issue before the trial court.  Thus, our analysis focuses on whether, as the State asserts, Gonzales had a reasonable belief based upon articulable facts that a dangerous individual remained in the SUV.  See Smith, 141 N.H. at 275; see also Buie, 494 U.S at 337.  The scope of this type of protective sweep must be narrowly confined to:  (1) a cursory inspection of those spaces where a person may be found; and (2) a duration that lasts no longer than necessary to dispel the reasonable suspicion of danger and, in any event, no longer than it takes to complete the arrest and depart the premises.  Buie, 494 U.S. at 335-36; Smith, 141 N.H. at 275-76.

On appeal, the defendant does not challenge the scope or duration of the protective sweep.  Rather, he argues that "the police lacked a reasonable belief that the area to be swept harbored any other person" and that "to the extent the police had reason to think anybody remained in the car, they lacked a reason to believe that such person posed a risk of danger."  Based upon the record before us, we conclude that the trial court did not err when it ruled that Gonzales reasonably believed that the searched area harbored an individual

4

who posed a danger to those on the arrest scene.  See Smith, 141 N.H. at 277.  As the trial court found, the defendant "was a convicted felon, had violated parole, had access to a gun, had a history of threatening others with his gun, and was suspected of selling heroin from his home."  Gonzales was also unsure how many individuals were in the vehicle.  The defendant was the last to exit the vehicle and was not carrying a handgun when he exited, and, because the windows were tinted and dirty, Gonzales could not see inside the SUV.  These findings are supported by the record.  Accordingly, we conclude that the record supports the trial court's ruling that the officers had a reasonable belief that the vehicle harbored another person who posed a danger to those on the scene.  See id. at 275.  Therefore, the protective sweep was permissible.

Because the State Constitution provides at least as much protection as the Federal Constitution under these circumstances, we reach the same result under the Federal Constitution as we do under the State Constitution.  See Smith, 141 N.H. at 275; Buie, 494 U.S. at 337.

## II.  Insufficiency of the Evidence

The defendant next argues that the trial court erred by denying his motion to dismiss because the State introduced insufficient evidence to prove that he possessed the heroin found in the SUV.  The defendant does not argue that the State failed to prove intent to dispense; rather, the defendant challenges the sufficiency of the State's evidence only as to his possession of the heroin.  Specifically, he argues that his awareness of the presence of the heroin does not constitute possession of the heroin, and that, because he was "one of four occupants" and was "neither [the SUV's] driver nor its owner," there is insufficient evidence that he possessed the contraband found inside the SUV.  See State v. Ward, 134 N.H. 626, 629 (1991) (concluding that evidence of knowledge of stolen property on premises was insufficient standing alone to prove constructive possession).

When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State.  State v. Germain, 165 N.H. 350, 354-55 (2013).  When the evidence as to one or more elements of the charged offense is solely circumstantial, the defendant must establish that the evidence does not exclude all reasonable conclusions except guilt.  Id. at 361.  The proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all reasonable conclusions based upon the evidence have been excluded.  Id.  "Further, the trier may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom."  Id. at 355

(quotation omitted). "In reviewing the evidence, we examine each evidentiary item in the context of all the evidence, not in isolation." Id.

To prove possession of a controlled drug, the State must show beyond a reasonable doubt that the defendant: (1) had knowledge of the nature of the drug; (2) had knowledge of its presence in his vicinity; and (3) had custody of the drug and exercised dominion and control over it. State v. Trebian, 164 N.H. 629, 632 (2013). When, as here, the defendant was not in physical possession of the drugs, the State must prove constructive possession. State v. Tabaldi, 165 N.H. 306, 316 (2013). This can be inferred from circumstances linking the defendant to the controlled substance, such as the presence of the defendant's personal possessions near the drugs. Id. Constructive possession of drugs need not be exclusive. Id. As we have recognized, "[w]hen more than one person occupies the premises where drugs are found, mere proof that a defendant is one of those occupants is insufficient to prove his constructive possession." State v. Smalley, 148 N.H. 66, 69 (2002). However, evidence that the defendant's personal possessions were in "close proximity to the controlled substance may provide a sufficiently close nexus between the defendant and the substance to allow the jury to infer possession." Id. (quotation omitted).

Here, construing all reasonable inferences in the light most favorable to the State, a reasonable juror could have found that the defendant possessed the heroin in the SUV. Boulanger testified that he understood that he would be given heroin in exchange for providing a ride to the defendant and the other passengers. He also testified that, after the other passengers had left the SUV, the defendant asked him whether he had given the police permission to search the vehicle, and that he told the defendant, "No." Cyr testified that immediately after the SUV was stopped, the defendant told Boulanger, "Don't let them search the vehicle." Based on this testimony, a reasonable juror could have concluded that the defendant was aware of the presence of the heroin in the SUV. See Trebian, 164 N.H. at 632. The evidence also supported a reasonable conclusion that the defendant "had custody of the drug and exercised dominion and control over it." Id. Cyr testified that the defendant carried a red backpack into the SUV before they left the Maple Street residence, and placed it in front of him on the floor. Gonzales found the backpack lying open on the floor of the SUV during the protective sweep. The contents of the backpack included drug paraphernalia that later tested positive for heroin. Thus, the jury could have reasonably inferred that the heroin had been in the backpack before it was placed under the front seat. See Germain, 165 N.H. at 355.

Moreover, before the defendant exited the SUV, he was alone in the vehicle for a period of 30 to 45 seconds. During that time, he would have had the opportunity to remove the heroin from the backpack and place it under the driver's seat — an area that was easily accessible to the defendant from his seat behind the front passenger seat. Although the defendant argues that any one of the four occupants of the SUV could have possessed the heroin, "the

6

jury could have drawn reasonable inferences based upon the evidence presented and concluded that it belonged to the defendant." Tabaldi, 165 N.H. at 316-17 (quotation and brackets omitted). "The State did not have to establish that the defendant had exclusive constructive possession of the heroin." Id. at 317.

We conclude that, viewing the evidence in the light most favorable to the State, a reasonable juror could have found guilt beyond a reasonable doubt. Accordingly, the trial court did not err when it denied the defendant's motion to dismiss.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.