**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**


**In Case No. 2015-0156, <u>State of New Hampshire v. Richard N. Saunders</u>, the court on February 11, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Richard N. Saunders, appeals an order of the Superior Court (<u>Houran</u>, J.), following a hearing, granting the State's motion to impose a suspended prison sentence for failure to comply with a condition of the sentence. He argues that the evidence compels a finding that he complied with the relevant condition.

We review the trial court's decision to impose the suspended sentence for an unsustainable exercise of discretion. <u>State v. Perry</u>, 166 N.H. 23, 26 (2014). To establish that the trial court unsustainably exercised its discretion, the defendant must demonstrate that its ruling is clearly untenable or unreasonable to the prejudice of his case. <u>Id</u>. We defer to the trial court's findings of fact unless they are unsupported by the evidence or clearly erroneous. <u>Cf</u>. <u>State v. Broadus</u>, 167 N.H. 307, 310 (2015).

In October 2010, the trial court sentenced the defendant, upon his plea of guilty to a charge of first degree assault, to a term of three-and-one-half to seven years at the New Hampshire State Prison, all of which it suspended for a period of five years upon the defendant's release from prison on a separate conviction. In October 2013, the State moved to impose the sentence on the basis that the defendant had violated a "good behavior" condition of the sentence. Following a hearing, the trial court found that the defendant had violated the condition.

The trial court did not, however, impose the entire sentence at that time. Instead, at the defendant's request, it imposed twelve months of the sentence to be served at the Strafford County House of Corrections, and suspended the remainder on the condition that he complete a substance abuse treatment program offered by the Strafford County House of Corrections known as "Therapeutic Community" (program). In granting the defendant's request, the trial court warned him that in the past, it had found "that a number of people have had difficulty in the [program] and not made it through," and that if he

failed to complete the program, it would likely impose the balance of his prison term. The defendant stated that he understood.

The program requires that its participants be housed in a separate unit isolated from the general population at the house of corrections. The participants engage in "treatment activities throughout the day," and are required to adhere to "strict behavioral and personal responsibility" standards. According to the Assistant Superintendent of Education and Programs at the Strafford County House of Corrections (assistant superintendent), it is important to isolate participants from the general population in order to limit "any type of negative influences or . . . typical . . . jailhouse behaviors . . . that might happen in . . . the general population." The assistant superintendent noted, however, that in the ten years that the program had existed, it had offered an alternative course of treatment to an individual housed in the general population on four occasions. In each of those instances, either a conflict of interest existed between the participant and an individual involved in administering the program, or the participant had cognitive deficits or some other factor beyond the participant's control that rendered the participant's presence in the program's unit "more of a detriment to the group as a whole."

Prior to his completion of the program, the defendant was removed from it for behavioral issues. Specifically, the defendant had been making "a lot of kind of problematic and disparaging comments directed at other participants and other staff people," behaviors that, according to the assistant superintendent, "would be destabilizing . . . to the [program's] milieu if we were to readmit him." The assistant superintendent also confiscated a mug containing stickers with images of marijuana, drug paraphernalia, and naked women that the defendant would place on the table during program classes.

Following his removal, the defendant made multiple requests to be readmitted to the program. Based upon his "pretty lengthy history" at the Strafford County House of Corrections, his treatment team denied the requests, concluding that he "would be [a] difficult case to . . . treat," and that his readmission would not be beneficial to the program's other participants. Because the treatment team wanted the defendant to have an opportunity to receive further treatment, however, and because the defendant's participation in treatment within the general population suggested that he was invested in returning to the program, the team offered to assemble an alternative course of treatment similar to the alternative courses provided in the four prior cases. Nevertheless, the assistant superintendent acknowledged that the defendant's circumstances were distinguishable from the prior cases because his exclusion from the program was attributable to behavioral issues within his control. The assistant superintendent testified that, were the defendant to complete the alternative treatment, he would receive a certificate of completion "for the competencies of the therapeutic community – in essence, . . . a separate, but equal, certificate of completion of the program."

2

Following the defendant's removal from the program, the State again moved to impose the suspended sentence. The trial court granted the motion, finding that the defendant "has not and will not complete the therapeutic community as ordered by the [trial court] as a condition of suspension." According to the trial court, "[t]he therapeutic community is a defined program and [the defendant] through his conduct, removed himself from that program to the point that he is not welcomed back into the program"; the alternative course of treatment offered the defendant, the trial court found, "is not the therapeutic community." On appeal, the defendant argues that "[t]he record compels the conclusion that [the defendant] was offered an alternative means of completing the [program], not a different program." We disagree.

In imposing the program as a condition to the continued suspension of the sentence, the trial court made clear to the defendant that his termination from the program would likely result in the sentence being imposed. Although the assistant superintendent described the alternative treatment offered to the defendant as "a separate [therapeutic community] curriculum," the assistant superintendent also testified that isolation from the general population and participation in treatment activities with program participants are significant components of the program. Indeed, in ten years of the program's history, alternative courses of treatment for individuals not residing within the program's unit had only been provided to four persons for whom circumstances beyond each of those participant's control rendered the program unavailable. Were the defendant to complete the alternative course of treatment, he would not receive the same certificate of completion as those who had completed the program, but would receive "a separate, but equal, certificate of completion."

Based upon the evidence, we conclude that the trial court's findings that the defendant did not, and would not, complete the program, and that the alternative course of treatment was not the program required under the terms of the defendant's sentence, were neither unsupported by the evidence nor clearly erroneous. Accordingly, the trial court's imposition of the suspended sentence was neither clearly untenable nor unreasonable to the prejudice of the defendant's case. Perry, 166 N.H. at 26.

Affirmed.

Dalianis, C.J., and Conboy and Lynn, JJ., concurred.

**Eileen Fox,
Clerk**

3