NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Cheshire
No. 2019-0124

THE STATE OF NEW HAMPSHIRE

v.

SHAWN M. MINSON

Argued: July 1, 2020
Opinion Issued: August 18, 2020

Gordon J. MacDonald, attorney general (Shane B. Goudas, attorney, on the brief and orally), for the State.

Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Shawn M. Minson, following a bench trial on stipulated facts, appeals his felony convictions for possession of cocaine, possession with intent to dispense the controlled drug fentanyl in a quantity of five grams or more, and possession with intent to dispense the controlled drug crack cocaine in a quantity of five grams or more. See RSA 318-B:2 (2017), :26 (Supp. 2019). On appeal, he argues that the Superior Court (Ruoff, J.) erred by denying his motion to suppress evidence obtained as a result of a "protective sweep" of his motel room, and by denying his post-conviction motion effectively seeking to reopen the motion-to-suppress record. We affirm.

I.  Motion to Suppress

We draw the following facts from the trial court's order, supplementing as necessary from the transcript of the hearing on the motion to suppress and other documents in the record containing facts the trial court could have found.  On January 28, 2018, a state trooper obtained information from a confidential informant that the defendant was selling a large quantity of crack cocaine and was staying at the Days Inn in Keene.  The trooper was informed by a Keene police officer that he had observed the defendant's vehicle parked at the Days Inn.  That same day, the trooper secured a warrant to arrest the defendant for an unrelated November 2017 road rage incident.

Later on January 28, the Keene police and state troopers went to the Days Inn and were informed that the defendant was staying on the second floor.  At police request, a motel employee called the defendant and asked him to come to the front desk.  The troopers went to the second floor of the motel and arrested the defendant as he opened the door to his room.  As the defendant was taken into custody, the ranking trooper saw three women inside the room through the open door.  One woman quickly turned around "completely," putting her back to the officers and the door.  The trooper saw "other movements from her arms and hands."  He also saw another woman moving around and that the room was full of smoke.  He directed the other troopers to enter and secure the room.

Upon doing so, the troopers observed a large wad of money on the center of the bed as well as a plastic bag containing what appeared to be crack cocaine.  When one of the women was asked for identification, she pointed to her purse, which was open and in which could be seen a plastic bag containing what appeared to be crack cocaine.  The woman confirmed that the bag contained crack cocaine and that it belonged to her.

Thereafter, a search warrant was obtained, and the defendant and two of the women were transported to the Keene police department.  During her police interview, one of the women advised that she had purchased heroin from the defendant in the motel room, but that she had not paid for it because the police had arrived.  She said that the defendant had given her the crack cocaine in her purse for free.  She also said that the defendant was keeping drugs in a safe inside the motel room and that he had showed her approximately three "eight balls" of crack cocaine and said that he was running low.  When the room was searched pursuant to the search warrant, heroin and crack cocaine were found.

Before trial, the defendant moved to suppress the evidence obtained as a result of the protective sweep of his motel room.  Following a hearing, the trial court denied the defendant's motion.  The trial court ruled that the following facts reasonably caused the troopers to be concerned that there were others

2

present in the motel room who were dangerous and could unexpectedly launch an attack: the women were observed moving inside the motel room; one of them quickly turned away from the troopers and the open door; the motel room was full of smoke; and the troopers had information that the defendant was selling large amounts of crack cocaine from the motel room. The trial court found it "reasonable for the troopers to suspect that a room being used for a large drug transaction with an undetermined [number] of people, who were moving around and one suddenly turned away from the troopers, may be a dangerous environment."

On appeal, the defendant contends that the protective sweep of his motel room violated his rights under Part I, Article 19 of the New Hampshire Constitution and the Fourth Amendment of the Federal Constitution. We first consider his argument under the State Constitution and rely upon federal law only to aid in our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983). When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous, and we review its legal conclusions de novo. State v. Francis, 167 N.H. 598, 602 (2015).

Part I, Article 19 of the State Constitution provides in pertinent part, "Every subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." N.H. CONST. pt. I, art. 19. "A warrantless search is per se unreasonable and invalid unless it comes within one of a few recognized exceptions." Francis, 167 N.H. at 602 (quotation omitted). "Absent a warrant, the burden is on the State to prove that the search was valid pursuant to one of these exceptions." Id. (quotation omitted).

One exception is known as the protective sweep, which is intended to ensure that law enforcement officers can "protect themselves from harm" at the scene of an arrest. Id. (quotation omitted). A "'protective sweep' is a quick and limited search of premises." Maryland v. Buie, 494 U.S. 325, 327 (1990). "[I]t occurs as an adjunct to the serious step of taking a person into custody for the purpose of prosecuting him for a crime." Id. at 333.

In Buie, the United States Supreme Court ruled that two types of protective sweeps are constitutional. "First, during a search incident to an arrest occurring inside a home, officers may, 'as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched.'" United States v. Colbert, 76 F.3d 773, 776 (6th Cir. 1996) (quoting Buie, 494 U.S. at 334). "Second, officers may conduct a search more pervasive in scope when they have 'articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual

3

posing a danger to those on the arrest scene.'" Id. (quoting Buie, 494 U.S. at 334). As additional limitations, the Court emphasized that a valid sweep is

> not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises.

Buie, 494 U.S. at 335-36 (footnote omitted).

The instant case involves the second type of protective sweep described in Buie. In Smith, we held that "the principles stated in Buie" as to the second type of protective sweep "are legitimate extensions of our own search and seizure law under part I, article 19 of the New Hampshire Constitution," and that "[o]ur constitution should not be interpreted to deny police officers the right to protect themselves from harm." State v. Smith, 141 N.H. 271, 276 (1996). To be valid, such a sweep must be supported by reasonable suspicion "that the area to be swept harbors an individual posing a danger to those on the arrest scene." Buie, 494 U.S. at 334; see United States v. Yarbrough, 961 F.3d 1157, 1163 (11th Cir. 2020). "Reasonable suspicion is an analysis of 'the totality of the circumstances—the whole picture.'" Yarbrough, 961 F.3d at 1163 (quoting United States v. Sokolow, 490 U.S. 1, 8 (1989)); see State v. Graca, 142 N.H. 670, 674 (1998).

"To determine the sufficiency of an officer's suspicion, we consider the articulable facts in light of all surrounding circumstances, keeping in mind that a trained officer may make inferences and draw conclusions from conduct that may seem unremarkable to an untrained observer." State v. Broadus, 167 N.H. 307, 310 (2015) (quotation omitted). "In making this determination, we do not consider each fact in isolation or necessarily compare the facts to another case." Id.; see United States v. Knights, 534 U.S. 112, 117 (2001) (characterizing as "dubious logic [the idea] that an opinion upholding the constitutionality of a particular search implicitly holds unconstitutional any search that is not like it"). A reasonable suspicion must be more than a hunch, and must have a particularized and objective basis. Broadus, 167 N.H. at 310-11. "Reasonable suspicion may be based upon activity that is consistent with both guilty and innocent behavior." State v. Perez, 173 N.H. ___, ___ (decided May 15, 2020) (slip op. at 7).

The defendant argues that the trial court erred by denying his motion to suppress because "the police lacked specific and articulable suspicion that the motel room harbored somebody who posed a danger." We disagree.

Here, before entering the motel room, the troopers had information that the defendant was selling crack cocaine from his motel room. When the door

opened, the officers observed three women moving inside the room. The room was full of smoke. One of the women quickly turned her back to the officers and to the open door, and one trooper testified that he "could see . . . other movements from her arms and hands."

The information about the defendant selling narcotics coupled with the police officers' observations of the women's conduct through the open door was sufficient to lead a reasonably prudent law enforcement officer to believe that the motel room harbored individuals dangerous to those on the arrest scene. See Buie, 494 U.S. at 334. "[T]he fact that the door was open could cause [an] officer to believe that anyone inside would be aware that [the defendant] had been taken into custody . . . ." United States v. Henry, 48 F.3d 1282, 1284 (D.C. Cir. 1995); see United States v. Biggs, 70 F.3d 913, 916 (6th Cir. 1995) (observing that because the "defendant left the motel room door open[,] . . . anyone present in the room had a clear view of the officers, thereby threatening their safety from an unknown person present in the room").

Moreover, given the totality of the circumstances here, a reasonable officer could also have believed that one or more of the women were armed. Although, arguably, it is "uncontroversial that drug activity can cause a rational officer to fear that . . . weapons to protect the drugs may be present," Yarbrough, 961 F.3d at 1164, the officers here had more than just such a generalized suspicion. See United States v. Taylor, 248 F.3d 506, 514 (6th Cir. 2001). Rather, they saw three women moving inside a room full of smoke and saw one of those women act furtively by quickly turning her back to the officers and the open door while moving her arms and hands. See Yarbrough, 961 F.3d at 1164-65; see also United States v. Caraballo, 595 F.3d 1214, 1225 (11th Cir. 2010) (finding the defendants' nervous demeanor and evasive movements justified a protective sweep). Such conduct could have caused a reasonable officer to rationally infer that the woman whose back was turned had or was reaching for a weapon. That rational inference would not have been based upon speculation, as the defendant contended at oral argument, but rather upon specific, observable conduct.

"While it is true that the officers could not be certain that a threat existed inside the [room], this does not impugn the reasonableness of their taking protective action." Henry, 48 F.3d at 1284. Certainty is not required. Nor is probable cause. See Alabama v. White, 496 U.S. 325, 330 (1990) ("Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause."). "It is enough that they [had] a reasonable basis for believing that their search [would] reduce the danger of harm . . . ." Henry, 48 F.3d at 1284 (quotation omitted). "In balancing the Government's interests against an individual's Fourth

Amendment rights, it is a bedrock principle that 'it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.'" Id. at 1285 (quoting Terry v. Ohio, 392 U.S. 1, 23 (1968)). "If a protective sweep were unlawful on these facts, the officers would be required to do just that." Id.

In sum, the police in the instant case had specific and articulable facts which, viewed in their totality, gave rise to a reasonable suspicion justifying a protective sweep. See Yarbrough, 961 F.3d at 1163-65 (deciding that police had specific and articulable facts to justify a protective sweep where "numerous anonymous tips suggested that the house was heavily trafficked and a source of possible drug activity," "the presence of two vehicles at the residence suggested that multiple people could be present," and the defendant's wife "fled to the bathroom" when the police called her name); United States v. Lawrence, No. 3:07-CR-127, 2008 WL 5120957, at *5 (E.D. Tenn. Dec. 3, 2008) ("It was proper for the officers to conclude that there was a danger of harm to themselves and others, and therefore to conduct a protective sweep when there were drugs present and the officers had discovered that [one of the defendants] lied to them about there being others in the apartment.").

In urging a contrary result, the defendant argues that "the fact that other people were present and reacted to the startling event of [his] arrest by moving does not give rise to a reasonable suspicion of danger," and that "even if the police supposed that [he] was using the room as a base for his drug-dealing operations, that supposition did not support a reasonable suspicion that, after [his] arrest, the room harbored a dangerous person." We agree with these general propositions, but they are beside the point. See Taylor, 248 F.3d at 514.[1]

It was not the mere presence of the women in the motel room or the mere fact that the defendant was suspected of dealing drugs that justified the protective sweep in this case. Rather, it was the totality of the circumstances that justified the protective sweep, circumstances that included the women moving, the room being full of smoke, and one of the women quickly turning her back to the officers and the open door while moving her arms and hands, that provided a basis for a reasonable officer to believe that the women could be dangerous. We decline the defendant's invitation to view each fact in isolation, rather than as part of the totality of the circumstances. See Broadus, 167 N.H. at 310.

---

[1] To the extent that the defendant contends that the police could not have inferred that he was dealing drugs from his motel room because the informant told the police only that the defendant dealt drugs and was in the motel room, we disagree. Such an inference was reasonable for trained officers to make. See Broadus, 167 N.H. at 310.

6

The defendant likens this case to Colbert. Colbert is distinguishable, however. In Colbert, the defendant was arrested next to his parked vehicle, which was approximately 40 to 50 feet away from his girlfriend's apartment, where he had been staying. Colbert, 76 F.3d at 775, 777. Soon thereafter, his girlfriend ran out of the apartment, yelling. Id. at 775. Although the police knew that the apartment belonged to the girlfriend, and although they saw her run out of it and had no reason to believe that anyone remained inside, they conducted a protective sweep of it. Id. at 775, 777-78. As one of the officers testified, he "didn't have any information at all" as to whether anyone was in the apartment before he conducted a protective sweep. Id. at 777-78 (quotation omitted). In that context, the court stated that a "[l]ack of information cannot provide an articulable basis upon which to justify a protective sweep." Id. at 778.

By contrast, in the instant case, the defendant was arrested at the threshold of his motel room door. Having intercepted the defendant as soon as he opened the motel room door, the police actually saw three women inside the room; they saw that the room was full of smoke; they saw the women moving around; and they saw one of the women act furtively by quickly turning her back to the police and to the open door. See Taylor, 248 F.3d at 514; see also United States v. Maestas, 941 F.2d 273, 278 (5th Cir. 1991) ("[A] police officer's reasonable suspicions may arise from the rational inferences of what he sees and hears."). Unlike the officers in Colbert, who had no information as to whether anyone remained in the apartment after the defendant was arrested and his girlfriend ran out of the apartment, Colbert, 76 F.3d at 777-78, the officers in the instant case knew that the motel room contained additional individuals as soon as the motel room door opened. Therefore, unlike the officers in Colbert, the officers in this case, based in part upon their own observations, had reasonable suspicion that the motel room harbored other individuals who posed a danger to them. See Smith, 141 N.H. at 277; Francis, 167 N.H. at 603. Because the State Constitution provides at least as much protection as the Federal Constitution under these circumstances, we reach the same result under both constitutions. See Francis, 167 N.H. at 604; Buie, 494 U.S. at 337.

## II. Post-Trial Motion to Reopen the Motion-to-Suppress Record

Five days after the defendant was convicted but before he was sentenced, the prosecutor sent the defense attorney a police report that had just been provided to her. The report, authored by a Keene police officer shortly after the defendant's arrest, stated, in pertinent part, that, according to a state trooper, the informant in this case had "bought an eight ball . . . from [the defendant] at the Price Chopper in Keene" the night before his arrest and that the defendant "was staying at the Days Inn in Keene."

7

Based upon this report, the defendant filed a motion for a new trial, arguing that the report supported his "position at the hearing on the motion to suppress." The defendant asserted that the report demonstrated that the police lacked knowledge that he was selling large quantities of crack cocaine from his motel room; rather, the police knew only that he was staying at the Days Inn and that, the night before his arrest, he had sold one individual a single "eight ball" at a different location in Keene.

The State objected, observing that two troopers averred in their affidavits that the informant had said that the defendant "was selling a large quantity of crack cocaine and was presently staying at the Days Inn in Keene." (Quotation omitted.) The trial court denied the motion, reasoning that "nothing in the report . . . would have impacted [its] analysis in denying the motion to suppress" because the report "is substantially corroborative of the State's evidence."

On appeal, the defendant contends that the trial court erred by not "re-open[ing] the suppression hearing to permit the introduction of further evidence in light of [the] report." He asserts that "after such a re-opened hearing, the evidence in its totality would require the court to grant his motion to suppress."

Before addressing the parties' arguments on this issue, we observe that when the defendant first filed his motion in the trial court, he styled it as a motion for a new trial. On appeal, however, he "does not claim that the [report] would have been favorable at trial." Rather, he "presses only the claim that the evidence would have been favorable at the suppression hearing." Moreover, although in the trial court, the defendant argued that the denial of his motion violated his constitutional right to due process under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, he does not brief that argument on appeal, and we, therefore, deem it waived. See State v. Blackmer, 149 N.H. 47, 49 (2003).

We review the trial court's denial of a motion to reopen the record under our unsustainable exercise of discretion standard. State v. Comtois, 122 N.H. 1173, 1175 (1982); see State v. Lambert, 147 N.H. 295, 296 (2001) (to establish that trial court's decision is unsustainable defendant must demonstrate that ruling was clearly untenable or unreasonable to the prejudice of his case).

Here, we cannot conclude that the trial court unsustainably exercised its discretion by denying the defendant's motion to reopen the motion-to-suppress record. The trial court specifically stated that "nothing in the report . . . would have impacted [its] analysis in denying the motion to suppress" because the report "is substantially corroborative of the State's evidence." The new police report corroborates the other information the police had that the defendant sold drugs and that he was staying at the Days Inn. Even with the new report,

8

the police could reasonably have inferred that the defendant had been selling large quantities of drugs from his motel room.  See Broadus, 167 N.H. at 310.  For all of the above reasons, therefore, the defendant has failed to demonstrate that the trial court's ruling is clearly untenable or unreasonable to the prejudice of his case.  See Lambert, 147 N.H. at 296.

Affirmed.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.